Emma Dietze, Administratrix, Appellee, v. Riverview Park Company, Appellant.

Gen. No. 18,447.

1. NEGLIGENCE—*amusement parks.* Evidence in an action against an amusement park company for injuries received by a spectator at a public exhibition held sufficient to charge defendant company with a duty toward the public and plaintiff with reference to the management of the exhibition in question.

2. NEGLIGENCE—*when amusement park company cannot escape liability for injury at an exhibition on its grounds.* Where a spectator at a public exhibition, for which an admission is charged, on the grounds of an amusement park company, is injured by the discharge of a firearm by a participant in a sham battle in the exhibition, the company cannot escape liability though the exhibition is given by a concessioner

and no financial interest therein by the company is shown, since the duty to use reasonable care to see that all the exhibitions on its grounds are reasonably safe remains with the company especially when the exhibition is a sham battle.

Appeal from the Superior Court of Cook county; the HON. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed June 3, 1913.

SCHUYLER, ETTELSON & WEINFELD, for appellant.

LE ROY RICHARDS, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This appeal is from a judgment of the Superior court of Cook county, entered upon a verdict in favor of the plaintiff, Emma Dietze, administratrix of the estate of Adolph Dietze, deceased, against the Riverview Park Company, defendant, appellant here.

The declaration avers that the defendant, on June 28, 1908, was possessed of a certain inclosure called "Riverview Park," located at or near the intersection of Belmont and Western avenues in the city of Chicago, and that it gave and conducted in the inclosure a public exhibition or show called the "Little Big Horn," and invited the public at large thereto, charging and receiving an admission fee, and in the exhibition or show firearms were used; that plaintiff's intestate, Adolph Dietze, paid an admission fee to defendant on that day and attended said exhibition or show, and was seated upon a certain seat provided by the defendant for spectators; that the defendant negligently failed to exercise any care to protect the deceased from injury in the use of said firearms, and negligently permitted a certain firearm to be discharged in a negligent manner at and toward him whereby pieces of metal and wadding were discharged against and into his left leg,

inflicting severe injuries and causing him to be afflicted with tetanus from which he died on July 5, 1908.

The second count of the declaration is substantially the same as the first.

The appellant filed a plea of not guilty and a special plea denying that it was possessed of the inclosure mentioned in the declaration, and that it gave, conducted and provided seats for the show called the "Little Big Horn."

The evidence on behalf of the plaintiff tended to show that on June 28, 1908, between the hours of six and seven o'clock in the evening, Adolph Dietze went to Riverview Park, and at the entrance to the park purchased an admission ticket which he gave to the gateman when he entered. In the central part of the park was an inclosure built of poles extending up and down like a stockade ten or twelve feet high. Inside this inclosure there was a show being given called the "Little Big Horn." The show consisted of a sham battle representing Custer's last fight.

Shortly after the deceased entered the park grounds a number of men, some of whom were dressed as cowboys and the others as Indians, came out of the inclosure above mentioned and paraded through the grounds of Riverview Park on horseback, and then went into the entrance to the inclosure. A band on the outside of the inclosure played and then went in. A ticket booth stood out in the grounds about twenty feet distant from the inclosure, and a "spieler" stood near this booth inducing the people in the park to purchase tickets to the show. The deceased purchased a ticket and entered the inclosure to see the exhibition.

The arrangement inside of the inclosure where the show was given was as follows: The seats for the audience faced north and were composed of circus seats running back and up to a height of from twelve to fifteen feet. In front of these circus seats was a row of boxes or small spaces with railing around and chains

in them. In front of the boxes was a narrow strip of ground a few feet wide. Beyond this was a small creek or river, and to the north of this a level space about 200 feet square, and north of this space something was built to represent mountains.

In the positions and maneuvers of those taking part in the performance, the cowboys faced to the north and the Indians to the south; the cowboys were not directly between the audience and the Indians. The battle between the cowboys and Indians had been going on for something like fifteen minutes or more when there was a lull. As the shooting died down, one of the Indians up in the mountain fired, as the Indians had all been doing throughout the performance, in the direction of the audience, and plaintiff's intestate was shot in his left leg, and a short time thereafter a piece of shell was taken from his leg.

Appellant offered evidence tending to show that the persons engaged in giving the sham battle cautioned the men taking part in them to keep their guns at a high elevation of forty-five degrees by reason of the fact that it is possible to do considerable damage with a wad alone at a distance of over 200 feet; to see that the right cartridges and nothing but new shells were used; that the men taking part in the battle should see to it that any shell or part of a shell, which might explode or break when being fired, was removed from the barrel of the gun before taking part again in the performance; and that the customary precautions as above indicated were taken, and instructions given accordingly to those who were participating in the sham battle.

On behalf of appellant, the evidence of its president tended further to show that he had instructed the management of the battle of the "Little Big Horn" show that firearms must not be discharged toward the audience, and that he had repeatedly visited the show and had never observed any violation of these instructions.

He further testified that he had never paid or discharged any of the performers connected with the show. The superintendent and property manager of the "Little Big Horn" show testified that the instructions above mentioned had been given and had never to his knowledge been violated. He further testified that as such manager he was employed and paid by the Coney Island Spectacular Amusement Company.

On the trial, appellant, at the close of the evidence, presented a motion to direct a verdict of not guilty. This motion was overruled by the court. It raises the main question in the case as to the liability of appellant upon the evidence.

Appellant contends that the evidence fails to make a sufficient showing as to the relationship of the proprietor of the show with appellant to bring the case within the purview of *Stickel v. Riverview Sharpshooters' Park Co.*, 250 Ill. 452, and *Babicz v. Riverview Sharpshooters' Park Co.*, 256 Ill. 24, for the reason it does not appear that there was any division of gate receipts between the persons giving the show and appellant, or that appellant had any financial interest in the show in question. There is some evidence offered by appellant from which it might be inferred that there was a corporation or association other than appellant known as the Coney Island Spectacular Amusement Co., which was engaged in giving the show in question. This is not shown by direct evidence. It appears only, if at all, by inference. The jury might as well, and with an equal right and without acting unreasonably, infer that such association was acting as the agent of appellant. The proof of the relation between appellant and the persons giving the show was in appellant's own hands, but it failed to produce it.

The evidence offered by appellee tends to show that the Riverview Park Company, appellant, at the time in question, was in possession, control and conducting the

amusement grounds known as ''Riverview Park.'' The
tickets sold at the booth within the appellant's grounds
were tickets, according to the evidence, printed on the
order of appellant and delivered by appellant to the
''Little Big Horn'' show, and charged to it on appel-
lant's account books, and it appeared from the evi-
dence that the tickets used by all the concessioners in
the park were printed at the order of appellant and
distributed to the concessioners. This evidence, con-
sidered with the other evidence in the case, was suffi-
cient to carry the case to the jury upon the question of
liability. While the evidence does not develop the rela-
tions between appellant and those persons having in
charge the show in question as fully and clearly as ap-
peared in the evidence in the above cited cases, it was
sufficient to carry the case to the jury on the questions
of fact involved under the pleadings. In other words,
the evidence was sufficient to charge the appellant with
a duty toward the public and the deceased with refer-
ence to the management of the show in question.

It is further contended that there was no evidence
of negligence on the part of appellant for it could not
be charged with liability for an act and an injury
therefrom which it could not have any reason to antici-
pate; that, at most, appellant can be charged with a
duty to use reasonable care in inspecting and super-
vising the performance given, and it could not be ex-
pected to presume that the persons giving the show
would violate express and specific instructions as to
the direction of firing.

In the *Stickel* case, *supra*, it was, in substance held
that in amusement places, where space is granted for
conducting attractions for the amusement of the public
and for which an admission fee is charged by the con-
cessioner and divided with the owner, there is una-
nimity of authority that the owner assumes an obliga-
tion that the devices and attractions operated by the
concessioners are reasonably safe for the purpose for

which the public is invited to use them; and it is also held that while there are some decisions to the contrary, the great weight of authority is that the owner will not be relieved from responsibility because the exhibition is provided and conducted by a concessioner. if it is of a character that would probably cause injury unless due precautions are taken to guard against it; and the court cites numerous authorities in support of the position.

It would serve no useful purpose to here review the authorities cited in the *Stickel* case, *supra*. Appellant cannot escape liability in this case under the authorities referred to above even though the evidence shows, or should be held to prove, that the show in question was given by a concessioner and not by appellant, and fails to show that appellant had a financial interest in the concession. It was one of the attractions which brought the public to appellant's grounds. Appellant assumed an obligation to see that the premises were in a reasonably safe condition so that persons there by its invitation would not be injured. In short, it was the duty of appellant to use reasonable care that there should be no firing of dangerous firearms upon its grounds by which the life or limb of any persons whom it had invited to its grounds would be jeopardized. As between the appellant and those producing the attraction, this duty of using reasonable care to see that all of the exhibitions on its grounds were safe remained with appellant although the show in question was under the management of a concessioner, and the character of this duty in a show of the kind conducted in the "Little Big Horn" inclosure was particularly strong and urgent because of the attendant danger in the use of firearms. It appears that appellant, to some extent at least, realized and acted upon the duty thus cast upon it, for its president had given instructions to the management of the battle show that firearms must not be discharged toward the audience, and the

superintendent and property manager of the show testified that the above instructions were given and were never violated to his knowledge.

The court did not err in refusing to direct a verdict for the defendant. We cannot say that the verdict is against the weight of the evidence; on the contrary, we think the evidence supports the verdict.

We have examined the alleged errors of the court in refusing to give instructions requested by appellant, and in giving the instructions requested by plaintiff stating the rule for assessing damages. We find no reversible error in the rulings of the court with reference to the instructions.

The verdict is not excessive.

The judgment is affirmed.

*Affirmed.*