## Victor Koehler, Appellee, v. La Salle Turn Verein, Appellant.

### Gen. No. 19,348.

NEGLIGENCE, § 24*—*liability of party letting hall for injuries resulting from defective condition of premises.* Where a club rented the use of a hall for its members for one evening, and during the evening a member was injured by reason of a defective trapdoor in the floor of the premises, *held* in an action by the injured member against the party letting the hall to recover damages that whether or not the relation of landlord and tenant existed between the defendant and the club, the case was properly submitted to the jury, and that a verdict and judgment for the plaintiff were not contrary to the law or the evidence.

Appeal from the Circuit Court of Cook county; the Hon. DEAN FRANKLIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed June 15, 1914.

**Statement by the Court.** This is an action for damages for personal injuries sustained by Victor Koehler, plaintiff, on April 22, 1911, by reason of a defective trapdoor, on the premises of LaSalle Turn Verein, a corporation, at No. 2050 Larrabee street in the city of Chicago. The action was originally brought against Lillian Bauman, as owner, and said LaSalle Turn Verein, as lessee and occupier, of said premises, but was subsequently dismissed as to said Lillian Bauman. The case has been tried twice before a jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The first trial resulted in a verdict in favor of plaintiff and against said LaSalle Turn Verein, defendant, for eight hundred dollars, but a new trial was granted. On the second trial the jury awarded plaintiff the sum of $550 as damages, and the court entered judgment on the verdict against said defendant, from which judgment this appeal was perfected.

Plaintiff's declaration consisted of one count and averred, in substance, that the defendant had rented from said Lillian Bauman and, as her tenant, was occupying on April 22, 1911, a certain building, known as No. 2050 Larrabee street, Chicago; that said defendant was accustomed to let or rent said building as a dance hall, bar, club room and drill hall to various persons at different times, from which it derived large gains and profits; that as such occupant the defendant was bound to exercise reasonable care to keep said premises in a reasonably safe condition for use by the persons to whom rented, as a place for dancing, drilling and other amusements, and for the use of said bar for the sale of liquid refreshments; that on and long prior to April 22, 1911, there was placed and maintained a certain timber floor and a certain vault cover or trapdoor, within said building and back of said bar in said building, to be used by persons walking upon said floor and as a means of access to the basement beneath; that said defendant well knew, or by the exercise of reasonable care could have known, that said floor and vault cover or trapdoor was in poor repair and condition, and was dangerous to persons who might lawfully walk along and upon the same; that on said April 22, 1911, the said defendant let and rented said building and hall, with the use and privileges thereof, and the use of said bar for the purpose of selling liquid refreshments, to a certain organization or society known as the Wandrie Bowling Club, for a certain sum of money; that plaintiff was a member of said society; that on the date aforesaid the said society gave a public dance or party and used said hall

and bar for the purposes aforesaid; that it was the duty of plaintiff, as such member and as chairman of the dance committee, to walk and move about said hall, and to get back of said bar, and to collect moneys as the proceeds from the sale of said liquid refreshments sold over said bar; that while plaintiff was in the discharge of his duty of so collecting said moneys, and while walking back of said bar and over and upon said floor and trapdoor, and while exercising due care for his own safety, the said trapdoor, by reason of the unsafe, rotten and dangerous condition of said floor and trapdoor, of which condition plaintiff had no notice, then and there broke, caved in and gave way, causing a part of plaintiff's body and limbs to be imprisoned in said trapdoor, and, by reason of the said negligence of the defendant, the plaintiff's right knee was wrenched and dislocated and he was severely and permanently injured, etc.

The material facts, as disclosed from the evidence on the second trial, are substantially as follows: Plaintiff was chairman of the dancing committee of the Wandrie Bowling Club. On January 29, 1911, he and two other members of the club visited the building of the defendant for the purpose of obtaining the use of portions of the same for a dancing party to be given for the members of the club and invited guests on the night of April 22, 1911. They interviewed the janitor of the building and, after they had made a cursory examination of the hall and barroom it was verbally agreed that the club could have the use on said night of the hall, barroom and basement underneath the barroom for the sum of forty-five dollars, and to bind the bargain plaintiff gave said janitor the sum of ten dollars, taking a receipt for said sum, it being understood that the balance should be paid on the night of the party. Early in the evening of April 22nd, plaintiff and several other members of the committee arrived at the hall for the purpose of attending to certain preliminary matters, and were

admitted by the then janitor of the building, a man named Kratschmer, who showed plaintiff the dancing hall, the barroom and the entrance to the basement from the barroom, which was by means of a trapdoor in the floor, back of the bar and directly over a flight of stairs leading to the basement. Some of the liquid refreshments were in the basement and the janitor opened said trapdoor, and plaintiff and a bartender, hired by the Wandrie Club, followed him into the basement, and were shown ''where the beer was.'' It was agreed between plaintiff and the janitor that the club might use as much beer as was wanted, and that the club should pay the janitor for all liquors consumed during the evening. In going into and returning from the basement plaintiff paid no particular attention to the trapdoor or to the conditions back of the bar. This bar extended east and west nearly across the barroom, about seven feet from the south wall. Back of the bar was a cashier's desk and the trapdoor, which door was about three feet wide and five feet long, and was fastened to the floor by means of two hinges near the south wall. When the door was open it leaned against said south wall. When it was closed it formed part of the floor back of the bar. After the dancing party had been in progress for several hours, and while plaintiff was back of said bar, attending to his duties as chairman of said committee and giving certain instructions to the person in charge of said cashier's desk, and while said trapdoor was closed, plaintiff started to go to the box office and, in stepping upon some part of said closed trapdoor, the same gave way and his right leg went down and his right knee ''was caught between the second and third boards.'' Plaintiff testified that the hinges of the trapdoor ''came off'' and a ''piece of board broke off and went down to the basement''; that a bartender ''helped him out''; that he did not think he was badly hurt at the time; that he continued in the performance of his duties; that at the conclusion of the dancing party he and the secretary of the Wan-

drie Club, before leaving the building, paid said janitor the balance due for the use of said hall, and for the liquors consumed, and "for everything," amounting in all to the sum of from eighty dollars to one hundred dollars; that the following morning his knee was "all swollen up" and he called a physician to attend him; that he remained in bed for six weeks under said physician's advice; that he was on crutches for three or four weeks and did not return to his work as foreman for an engraving company until about ten weeks after the accident, and that said physician attended him about sixteen times, rendering him a bill of forty-eight dollars. Said physician testified that, in his opinion, plaintiff had sustained a permanent injury in his right knee. Louis Miller, employed as one of two bartenders by said Wandrie Club on the night of the party, testified that he saw the accident; that he was tending bar at the time; that after he arrived at the hall early in the evening he opened the trapdoor in order to go down in to the basement and while doing so noticed that one hinge on the trapdoor was loose; that he called the attention of the other bartender to that fact but that he did not say anything about it to the plaintiff or to the janitor. Charles Leidiger testified that he witnessed the accident; that he was standing outside of the bar at the time, opposite the trapdoor; that when plaintiff moved away from the cashier's desk and stepped upon the trapdoor he "heard a crack;" that plaintiff's right leg went down at one corner and the trapdoor came up at another corner, and that when he examined the trapdoor immediately after the accident there was a hole in the door on the second or third board. H. W. Kratschmer testified that he was employed by defendant as janitor during the months of April and May, 1911; that it was his duty to see that the premises were in good order in every respect; that he had full charge of the premises and that it was a part of his duties to rent the premises on behalf of the defendant to such parties as might

desire to use the same; that sometimes the hall was rented once a week and sometimes four or five times a week for dancing parties, and occasionally for political meetings and weddings; that when used for dancing parties it was a part of his duties to see that the dancing was not conducted in an improper manner; that he admitted plaintiff to the premises on the night of April 22nd and that early in the evening he checked up the beer in the basement with plaintiff so that there would be no mistake; that when then going into the basement he made no particular examination of the trapdoor; that he had occasion to walk across the trapdoor every day, and that the trapdoor was used and walked upon every time there was a dancing party; —that he came into the barroom at the time of the accident "in time enough to see him (plaintiff) pull his leg out of the hole;" that he first saw the trapdoor about seven years ago; that after the accident he noticed that one of the hinges was loose, that the first board of the door was "sprung loose," that probably water got in between the cleat and the board, rusted the nails and the board came loose, and that "the nails were rusted and you could bend them right in two."

A. A. WORSLEY, for appellant; GLENN P. SAYERS, of counsel.

CHARLES I. BARKER and BOLTON & MORIARTY, for appellee; MAURICE J. MORIARTY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is contended by counsel for the defendant that, under the facts of this case, if anyone is liable for the injuries sustained by plaintiff it is the Wandrie Bowling Club and not the defendant. It is argued, in substance, that the defendant made a verbal lease of the premises to the Wandrie Club for the night of April

22, 1911; that on that night the relation of landlord and tenant existed between defendant and the Club; that at the time of making the lease nothing was said as to the condition of the premises and the Club took the premises as it found them; that the evidence does not disclose that at the time of making the lease or at any time prior to the accident the defendant knew, or by the exercise of ordinary care might have known, that the trapdoor was in a defective condition; and that, hence, the defendant is not liable. It is contended by counsel for plaintiff, in substance, that this case "is not one of landlord and tenant and notice," but is such as should, under the facts, be decided upon a different theory, viz., that the members of the Wandrie Club, including plaintiff, had been invited, in consideration of the payment of an agreed sum, to come upon the premises for the purpose of holding a dancing party, at which liquid refreshments were to be sold to said members and guests. And counsel argue that said members, including plaintiff, had a right to assume that the premises were suitable and reasonably safe for that purpose; that the evidence discloses that the defendant did not use reasonable care to keep the premises in a reasonably safe condition, and that, therefore, the defendant is liable for the injury to plaintiff, lawfully upon the premises.

In *Pauckner v. Wakem*, 231 Ill. 276, it was decided that the owner of premises, who expressly or impliedly invites another person to enter the premises for the transaction of business in which both are interested, owes to such person the duty to exercise reasonable care for his safety while on that portion of the premises required for the purpose of his visit, and that such duty extends to a servant of such person. (See also *Franey v. Union Stock Yard & Transit Co.*, 235 Ill. 522; *Hart v. Washington Park Club*, 157 Ill. 9, 13; *Purtell v. Philadelphia & R. Coal & Iron Co.*, 256 Ill. 110, 114.) In *Stickel v. Riverview Park Co.*, 250 Ill. 452, 454,

it was decided that in amusement places, where space is granted for conducting attractions for the amusement of the public and for which an admission fee is charged by the concessioner and divided with the owner, the owner assumes an obligation that the devices and attractions operated by the concessioners are reasonably safe for the purposes for which the public is invited to use them. (See also *Babicz v. Riverview Park Co.*, 256 Ill. 24; *Dietze v. Riverview Park Co.*, 181 Ill. App. 357.) In *Turgeon v. Connecticut Co.*, 84 Conn. 538, it was decided that where a street railway company, owning and maintaining an amusement park for its patrons and the public in order to hold and increase its traffic, invited people to come upon the premises for business or pleasure, it was bound to exercise reasonable care to have and keep the premises, and the structures and appliances thereon, reasonably safe for such visitors, and that it made no difference, as to the company's liability, whether an admission fee to the park was charged or not, or whether the structures and appliances were leased to others, who operated and controlled them subject to the company's general supervision. In *Camp v. Wood*, 76 N. Y. 92, the defendant kept an inn upon the premises and in the third story of the inn was a hall, which he was accustomed to let for public purposes. On the evening when plaintiff was injured the defendant had let the hall for a dance, to which all persons who applied were admitted on payment of an entrance fee. The hall was reached by two flights of stairs, one directly above the other. The entrance from the street was by a door opening into the hallway opposite the foot of the lower flight of stairs. There was a door in the second story which occupied the same relative position to the upper stairs, and this door opened upon a piazza or wooden awning, six feet wide and twelve feet above the sidewalk. Plaintiff paid the entrance fee and was admitted to the dance. When he left to go home, after passing down the upper stairs, he went out of the door opening upon

the piazza, supposing that it was the street door. The night was dark and the door was open. There was no railing or guard on the piazza and plaintiff walked off of the piazza, fell to the street and was injured. The trial resulted in a verdict and judgment for plaintiff. In affirming the judgment, it was *held* that the defendant, by letting the hall for public purposes, held out to the public that the hall was safe, and he was bound to exercise care to provide safe arrangements for the entrance and departure of people, who came there upon his invitation, and that the question whether there was a breach of this duty was, upon the evidence, properly submitted to the jury. In *Oxford v. Leathe,* 165 Mass. 254, plaintiff was injured by the falling of an elevated platform on premises owned by the defendant. Some days before the accident the defendant had made a written agreement that he had ''leased the Woburn Rink and seats now therein for four nights,'' August 2nd to 5th inclusive, to one Gleason, all money in the box office to be under the defendant's control until twenty dollars was paid each night. Gleason's understood purpose was to give exhibitions of horse training. On the evening of August 9th, Gleason was holding over the foregoing terms by an oral understanding, and an entertainment was to take place, and plaintiff, with others, was standing on said platform in front of the entrance, waiting for the doors to open, when the platform fell. There was evidence that the support of the platform was defective. The jury returned a verdict for the plaintiff upon which judgment was entered. On appeal the judgment was affirmed, the court holding that if the jury found that the use actually made of the platform was something which the defendant was bound to have contemplated, he was liable for any neglect of proper precautions to make it safe, whether Gleason also was to blame or not, just as in the case of premises let with a nuisance upon them, and that the short and interrupted character of the occupation allowed to Gleason made it obvious that the

safety of the building must be left mainly to the defendant. And under the decisions of our Supreme Court it is the law of this State that, while as a general rule the occupant and not the owner is responsible for injuries arising from a failure to keep the premises in a proper state of repair, still, where the premises are let with a nuisance upon them by means of which the injury complained of is received, in such case the owner is liable. (*Tomle v. Hampton,* 129 Ill. 379, 383; *West Chicago Masonic Ass'n v. Cohn,* 192 Ill. 210, 218; *Gridley v. City of Bloomington,* 68 Ill. 47, 51.)

Under the facts of the present case, as outlined in the foregoing statement, and under the law, we are of the opinion that, whether or not the relation of landlord and tenant existed between defendant and the Wandrie Club on the night of April 22, 1911, the case was properly submitted to the jury, and that the verdict and judgment are not contrary to the law or the evidence.

Counsel for defendant urge that the court erred in giving instruction No. 9, offered by plaintiff. While the language used in the first sentence of this instruction is not accurate, we do not think that, in view of all the other given instructions, the instruction was misleading to the jury, or that the giving of it constitutes such error as requires a reversal of the judgment. Nor do we think that the court erred in refusing to give certain instructions offered by the defendant, as argued by counsel.

Finding no reversible error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*