JOHN J. PURTELL, Appellee, *vs.* THE PHILADELPHIA AND READING COAL AND IRON COMPANY, Appellant.

*Opinion filed October 26, 1912—Rehearing denied Dec. 4, 1912.*

1. NEGLIGENCE—*owner of premises owes duty to persons there by express or implied invitation.* The owner of premises owes to a mere licensee no duty to exercise ordinary care to keep the premises in reasonably safe condition, but he does owe such duty to persons upon the premises by express or implied invitation.

2. SAME—*what is meant by implied invitation.* To be upon premises by implied invitation means that the person is there present for a purpose connected with the business in which the owner of the premises is engaged or which he permits to be carried on.

3. SAME—*a boy employed by servants to carry water is not a mere licensee.* A boy employed by car pushers and coal handlers in a coal yard, in accordance with a custom of long standing, to carry water to them while they are at work unloading coal from a vessel is not a mere licensee, and the owner of the premises owes to him the duty of exercising ordinary care to keep the premises in a reasonably safe condition while he *is* there on the implied invitation of such owner.

4. SAME—*what constitutes negligence.* To leave a heavy boom, used in unloading coal from a vessel to a platform, so insecurely fastened on a windy day that it is likely to break the fastening and swing across the platform and injure persons working there is negligence.

5. CHILD LABOR—*object of the Child Labor law.* The object of the Child Labor law of 1903 was to prevent absolutely the employment of children under the age of fourteen years in the occupations named therein, and a construction should be given which will effectuate that purpose if it can be done consistently with the wording of the statute.

6. SAME—*Child Labor law not limited to cases where relation of master and servant exists.* Employers in occupations coming within the Child Labor act of 1903 are bound to see that children are not employed contrary to its provisions, either by themselves or by their agents, officers or employees, and they are liable without regard to whether such employment is an intentional or willful violation of the act.

7. SAME—*words defined in act of 1897 have same meaning in act of 1903.* There being nothing in the Child Labor act of 1903

to indicate the contrary, the words "manufacturing establishment, factory or workshop," as defined expressly in the Child Labor act of 1897, must be held to have the same meaning in the act of 1903, and include a coal yard where coal is cleaned, sorted and stored.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

ULLMANN, HOAG & DAVIDSON, (PARKER H. HOAG, of counsel,) for appellant.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee recovered a judgment in the circuit court of Cook county against appellant for personal injuries alleged to have been sustained while working on its coal dock. The judgment was affirmed on appeal to the Appellate Court for the First District and a certificate of importance was granted. This appeal followed.

When the issues were finally made up the declaration contained three counts. The first (a common law count) alleged that appellant was engaged in the business of dealing in coal and was possessed of a coal yard, and that appellee was employed there as a water-boy by certain of appellant's servants or sub-agents for the purpose of carrying water to them while they were working in said coal yard, with the knowledge, consent, permission and approval of appellant; that appellee was eleven years and eleven months old; that it was appellant's duty to use all due care and diligence to furnish appellee a reasonably safe place to work, etc. The other two counts charged appellant with the violation of an act regulating the employment of children,—one in that it permitted appellee to be employed in a mercantile institution, and the other in a manufacturing

establishment, factory and workshop. Michael M. Connery, superintendent of the dock, was also made a defendant. The jury returned a verdict of guilty as to appellant and not guilty as to Connery.

On the trial it appeared from the evidence that appellant, at the time of the accident, was a coal mining and coal selling corporation. It mined coal in Pennsylvania and brought it in vessels to a dock and coal yard near Eighteenth street, in Chicago, and there sold it. The coal was cleaned and screened in the yard and then hauled away. In this yard, at the edge of the river, about thirty-five feet above the water, was a large platform about twenty-five feet wide and two hundred feet long, extending along the river bank, on the top of which were small tracks, which ran back to storage bins. On the river side of this platform three booms projected, operated from masts extended above the platform. To the booms were attached blocks and pulleys, by means whereof, and by the use of steam power, coal was unloaded in buckets from the vessel to the platform and dumped in small coal cars. These cars were then pushed by men along the platform on the tracks to storage bins and dumped. At the time of the accident, in October, 1903, about fourteen men were hoisting, dumping and pushing cars on this structure and others were helping unload in the vessel. The platform was used by workmen only when a boat was being unloaded. It appears further from the evidence that for sixteen years it had been customary for the men, when working on the platform, to have a water-boy bring them water. The buckets or cans were filled from a hydrant in the coal yard and taken by the boy up a pair of winding stairs to the platform. The men on the platform employed the boy and paid him when they received their pay from appellant. The day before the accident appellee was passing along by the coal yard and a man on the platform called down to him, asking if he wanted a job for a couple of days, until the boat was un-

loaded.  The boy thereupon went home and procured some cans and went back to the platform, where some of the men showed him where to get the water, and he worked that day and the next, until the accident.  Whenever the men wanted water they would call to the boy and he would take the can to them on the platform but not out on one of the "runs."  When not actually carrying water he sat on a bench on the platform.  It appeared also from the testimony that while he carried water principally, he occasionally brought beer to some of the men.  On the day of the accident two of the derricks on the masts were being used by the men in unloading coal.  A strong wind was blowing.  The boom on the idle mast had been tied that morning by Humphrey McCarthy, an employee of the defendant company, to a post of the platform by means of a "marlin string,"—that is, a strand out of the end of a rope, about the size of a lead pencil.  The wind broke the string, and the block hanging from the boom swung out and struck appellee in the back, knocking him from the platform, and he fell seventeen feet or more to the deck of the boat.  Both arms received a compound, comminuted fracture of both bones near the wrist, besides a fracture at the elbow.  Appellee was in a hospital for months, suffering great pain.  After the wounds healed portions were found suppurated because of infection.  The arms were permanently shortened and deformed and the right wrist absolutely immovable.  The hands are smaller than normal and will always remain so.  In the right arm the ulna does not articulate with any of the bones of the wrist.  Appellee is compelled to keep straps on both wrists to strengthen them and a bandage on his right hand.

Appellant insists that there was no evidence warranting the verdict under the declaration, and that peremptory instructions offered should have been given.  It contends that appellee was a mere licensee, and went upon appellant's premises for purposes of his own and not for any purpose

connected with the business of appellant, while appellee contends that under the facts in this case he was upon the premises by appellant's invitation, engaged in a mutual business.

The owner of premises owes no duty to exercise care to keep his premises in a reasonably safe condition to a person who may be there as a mere licensee. (*Pauckner v. Wakem,* 231 Ill. 276, and cases cited.) If, however, such person is there by the invitation, express or implied, of the owner, then such owner owes him a duty to exercise ordinary care to keep the premises in reasonably safe condition. When a person is upon premises by implied invitation, it means he is there for a purpose connected with the business in which the owner of the premises is engaged or which he permits to be carried on. (*Plummer v. Dill,* 156 Mass. 426.) The evidence in this record shows plainly that for many years there has been a custom, which must have been well known to those in charge of appellant's yard, for the car pushers and others, in their work of handling coal, to employ a boy as a water carrier, who kept them supplied with water, and who sometimes, at the request of such employees, was expected to go for beer. In *Atkins v. Lackawanna Transportation Co.* 182 Ill. 237, this court held that where the owners of a vessel engaged in carrying merchandise permitted a boy on said vessel for the purpose of supplying its employees with drinking water, he being hired by such employees for that purpose, such owners must exercise reasonable care towards such boy while he was on the vessel. In *Illinois Central Railroad Co. v. Hopkins,* 200 Ill. 122, it was held that one going to a railroad depot to deliver meals to mail clerks on a train, in accordance with an agreement between her and such mail clerks, where such practice had been followed for years with the knowledge and consent of the railroad company, was not a mere licensee upon the depot platform,

but must be regarded as there by the implied invitation of said railroad company.

The argument of counsel for the appellant that the car pushers could have gone to the hydrant themselves, and that therefore there was no necessity of employing a water-boy, is without force. This argument concedes, what we think is true, that water was a physical necessity in the vigorous and dusty work in which these car pushers were engaged. (*Birmingham Rolling Mill Co.* v. *Rockhold*, 42 So. Rep. [Ala.] 96.) The evidence offered by appellant showed that the men in the boat were paid by the ton for the coal handled, and that the car pushers and others on the platform had to take the coal away as fast as it was sent up to them. Under such circumstances the argument that each man engaged in dumping and pushing cars on the platform, whenever he needed a drink, could go along the runs and down the stairs, get his drink and climb up-stairs and over the runs to his work again, is unreasonable. If the car pusher left his place at the car, the hoister and other men working in conjunction with him would not be able to do their work. Such a plan would disorganize and greatly hinder the unloading of the boat. It was therefore to the pecuniary interest of appellant that a boy should be employed by someone to bring water to the men. The existence for years of such a custom of furnishing water is sufficient evidence that the method was considered by all the parties a reasonable and economical one.

Counsel for appellant rely upon *Sweeny* v. *Railroad Co.* 10 Allen, (Mass.) 368, as sustaining its contention that appellee was on the premises as a licensee. In discussing the question whether a person was a licensee that court held that the gist of the liability consisted in the fact that the use of the premises was not only acquiesced in by the owner or person in possession, but was in accordance with the intention and design for which the place was adapted and prepared to be used. Under the reasoning of that case

appellant assumed an obligation that the platform in question in this case was in a safe condition, suitable for the purposes for which it was being used by appellee. Appellee was upon the platform by appellant's implied invitation to do work in which he and appellant were mutually interested. The latter was therefore required to exercise reasonable care for appellee's safety while engaged in that work on said premises. The decisions relied on by appellant are different as to their facts, and the rules laid down therein do not conflict with the conclusion here reached.

To leave the block, and the boom from which it hung, so insecurely fastened that they were liable to swing over the platform and injure those working thereon was negligence on the part of appellant. Appellant was required by law to keep its premises in a reasonably safe condition for appellee while he was thereon at the implied invitation of appellant. The fellow-servant doctrine does not apply in this case; and it is not material whether Humphrey McCarthy, who fastened the boom, was a fellow-servant of appellee or a foreman in charge of the car pushers at the time of the accident.

Neither have the doctrines of assumed risk and contributory negligence any place in the case. The common law count alleged that appellee, by reason of his inexperience and tender years, was "unaware of and did not appreciate the said risk of injury." The evidence in this case justified the verdict under the common law count, and the peremptory instruction was therefore properly refused.

The other two counts in the declaration were based on the Child Labor act of this State. As the errors assigned involve instructions applying to these counts it is necessary that they be considered.

It is contended that this act can only apply when the relation of master and servant actually exists. We cannot agree with this contention. Section 1 of the Child Labor act of 1903 reads in part: "No child under the age of

fourteen years shall be employed, permitted or suffered to work at any gainful occupation in any * * * mercantile institution, * * * manufacturing establishment, * * * factory or workshop." (Hurd's Stat. 1911, p. 1106.) The object of this statute was to prevent absolutely the employment of children under the age of fourteen years in the occupations named therein, and a construction should be given which will effectuate that purpose, if it can be done consistently with the wording of the statute. (*American Car Co.* v. *Armentraut,* 214 Ill. 509.) Those who are liable under it are bound, at their peril, to see that children are not employed contrary to its provisions. (*Strafford* v. *Republic Iron Co.* 238 Ill. 371; *Beauchamp* v. *Sturges & Burn Manf. Co.* 250 id. 303.) To put the construction on this statute contended for by counsel for the appellant would leave the words "permitted or suffered to work" practically without meaning. It is the child's working that is forbidden by the statute and not his hiring, and while the statute does not require employers to police their premises in order to prevent chance violations of the act, they owe the duty of using reasonable care to see that boys under the forbidden age are not suffered or permitted to work there contrary to the statute. A person is liable if, contrary to the provisions of the statute, a child under age is employed by him, either directly or through an agent, officer or employee, and without regard to whether such employment is an intentional or willful violation of the statute. (*Beauchamp* v. *Sturges & Burn Manf. Co. supra; People* v. *Taylor,* 192 N. Y. 398.) The coal pushers who hired appellee were servants of appellant and were entirely under its control. The latter had the right to order its employees to hire no boys under lawful age to carry water, and to enforce obedience to such order. This construction is consistent with that put upon similar statutes in other jurisdictions. *State* v. *Shorey,* 48 Ore. 396; *Inland Steel*

*Co.* v. *Yadinak,* 87 N. E. Rep. (Ind.) 229; *Iron and Wire Co.* v. *Green,* 108 Tenn. 161.

It is further insisted that the Child Labor act does not apply because the platform where appellee was working at the time of the injury was not included in the places forbidden by the statute. This coal yard, wherein coal mined by its owner was stored and from which it was sold, is surely included within the meaning of a mercantile institution or establishment. The Child Labor act of June 9, 1897, provided (sec. 8) that "the words 'manufacturing establishment,' 'factory' or 'workshop,' as used in this act, shall be construed to mean any place where goods or products are manufactured or repaired, dyed, cleaned or sorted, stored or packed, in whole or in part, for sale or for wages, and not for personal use of the maker, or his or her family or employer." (Hurd's Stat. 1897, p. 797.) Without passing on the question as to whether the act of 1903, on which two counts of the declaration were based, repealed all of said law of 1897, we are of the opinion that the words "manufacturing establishment, factory or workshop," as defined in said act of 1897, were used with the same meaning in both acts. Words defined in a prior statute will be understood in the same sense in subsequent statutes unless the contrary appear. (2 Sutherland on Stat. Construction,—2d ed.—sec. 399; 26 Am. & Eng. Ency. of Law,—2d ed.—611.) The evidence shows that the coal was cleaned, assorted and stored in the yard in question. The platform was a part of the yard, and should be considered, on the proof in this case, as a part of a mercantile institution or manufacturing establishment.

The appellant's objections to the instructions given are sufficiently answered by what has already been said. The refused instructions were drawn upon a theory of the law not applicable to the facts of this case and which has already been discussed.

Some questions of minor importance with reference to the admission of evidence and the refusal to grant a continuance have been called to our attention in the briefs. We deem it sufficient to say that they have received our consideration and we find no reversible error in the record.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*