305 S.E.2d 299

Michael AMOROSO, et al., etc. Marion County Deputy Sheriffs Association

v.

The MARION COUNTY COMMISSION and Charles H. Dodd, etc.

No. CC936.

Supreme Court of Appeals of West Virginia.

July 6, 1983.

Dennis H. Curry and Roger D. Curry, Fairmont, for plaintiffs.

Paul E. Parker, III, Parker & Parker, Fairmont, for defendants.

HARSHBARGER, Justice:

We have three certified questions from the Circuit Court of Marion County about whether West Virginia's Wage and Hour Law, W.Va.Code, 21–5C–1, *et seq.*, provides coverage and protection to deputy sheriffs, and if so, who is their employer.[1]

Michael Amoroso and several other Marion County deputy sheriffs brought this suit, as individuals and as members of the Marion County Deputy Sheriffs' Association, against the Marion County Commission and Charles H. Dodd, the sheriff of Marion County, for a declaration that the commission and sheriff are joint "employers" and that deputy sheriffs are "employees" affected by the act. The deputies also sought an order directing the commission and sheriff to pay them overtime compensation for all overtime work thereafter performed, a judgment of thirty thousand dollars for unpaid overtime compensation, and a writ of mandamus directing the commission and sheriff to make appropriate provi-

---

1. W.Va.Code, 21–5C–8(a) and (d) provides:

"(a) Any employer who pays an employee less than the applicable wage rate to which such employee is entitled under or by virtue of this article shall be liable to such employee for the unpaid wages; an agreement by an employee to work for less than the applicable wage rate is hereby declared by the legislature of West Virginia to be against public policy and unenforceable.

· · · · ·

"(d) In any such action the amount recoverable shall be limited to such unpaid wages as should have been paid by the employer within two years next preceding the commencement of such action. Nothing in this article shall be construed to limit the right of an employee to recover upon a contract of employment."

sions for the payment of overtime compensation.[2]

After the commission answered the complaint, the deputy sheriffs moved for summary judgment. The circuit court denied the motion and certified the following questions:[3]

1. Is the County Commission of Marion County, a corporation, the employer of the plaintiffs as Deputy Sheriffs of Marion County, West Virginia within the meaning of Article 5C, Chapter 21 of the West Virginia Code?

2. Is the Sheriff of Marion County the employer of the plaintiffs as Deputy Sheriffs of Marion County, West Virginia, within the meaning of Article 5C, Chapter 21, of the West Virginia Code?

3. Are Deputy Sheriffs of Marion County employees within the meaning of Chapter 21, Article 5C of the West Virginia Code and as such entitled to receive overtime pay?

We will answer the third certified question first. "Employee" is broadly defined to include "any individual employed by an employer," in W.Va.Code, 21–5C–1(f). "Employ" is expansively defined as meaning "to hire or permit to work." W.Va. Code, 21–5C–1(d). The deputy sheriffs, having been hired and permitted to work, are therefore employees entitled to the benefit of the act, unless they fall within any of the specific occupational categories expressly excluded from the definition of "employee". W.Va.Code, 21–5C–1(f) states:

As used in this article:

(f) "Employee" includes any individual employed by an employer but shall not include: (1) Any individual employed by the United States; (2) any individual engaged in the activities of an educational, charitable, religious, fraternal or nonprofit organization where the employer-employee relationship does not in fact exist, or where the services rendered to such organizations are on a voluntary basis; (3) newsboys, shoeshine boys, golf caddies, pinboys and pinchasers in bowling lanes; (4) traveling salesmen and outside salesmen; (5) services performed by an individual in the employ of his parent, son, daughter or spouse; (6) *any individual employed in a bona fide professional, executive or administrative capacity;* (7) any person whose employment is for the purpose of on-the-job training; (8) any person having a physical or mental handicap so severe as to prevent his employment or employment training in any training or employment facility other than a nonprofit sheltered workshop; (9) any individual employed in a boys or girls summer camp; (10) any person sixty-two years of age or over who receives old-age or survivors benefits from the social security administration; (11) any individual employed in agriculture as the word agriculture is defined in the Fair Labor Standards Act of 1938, as amended; (12) any individual employed as a fire fighter by the state or agency thereof; (13) ushers in theaters; (14) any individual employed on a part-time basis who is a student in any recognized school or college; (15) any individual employed by a local or interurban motorbus carrier; (16) so far as the maximum hours and overtime compensation provisions of this article are concerned, any salesman, partsman or mechanic primarily engaged in selling or servicing automobiles, trailers, trucks, farm implements, aircraft if employed by a nonman-

2. The deputies alleged that during the two-year period preceding the lawsuit they had been required by the Sheriff to work in excess of forty-two (42) hours per week on frequent but irregular occasions, and that both they and the sheriff had made a proper demand to the commission for payment of overtime wages as required by the act and for inclusion of sufficient monies for such payment in the budget of the sheriff's office.

During the second regular session of the 64th Legislature in 1980, the wage and hour law was amended, effective July 1, 1980, decreasing the maximum allowable work hours per week without overtime compensation from forty-two to forty. W.Va.Code, 21–5C–3(a); 1980 W.Va.Acts, ch. 130.

3. In certifying these questions to us pursuant to W.Va.Code, 58–5–2 and Rule 13 of the Rules of Appellate Procedure, the circuit court answered each question in the negative.

ufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers; (17) any employee with respect to whom the United States department of transportation has statutory authority to establish qualifications and maximum hours of service; or (18) any person employed on a per diem basis by the senate, the house of delegates, or the joint committee on government and finance of the legislature of West Virginia, other employees of the senate or house of delegates designated by the presiding officer thereof, and additional employees of the joint committee on government and finance designated by such joint committee. (Emphasis supplied.)

It is apparent that deputy sheriffs are not expressly excluded from employee status. Neither the sheriff nor the commission direct us to any exclusionary language eliminating them from coverage, and the only exclusionary language conceivably applicable to the deputy sheriffs is "any individual employed in a bona fide professional, executive or administrative capacity."

We considered the scope of this exclusionary language in *State ex rel. Crosier v. Callaghan,* 160 W.Va. 353, 236 S.E.2d 321 (1977), finding that state conservation officers employed by the Department of Natural Resources are not professional employees excluded from the act, because their

positions had no educational or experience requirements. We also found that conservation officers are not executive or administrative employees.

More recently in *Rohrbaugh v. Crabtree,* 164 W.Va. 791, 266 S.E.2d 914 (1980), we concluded that a Probation Officer I is a professional employee excluded from coverage because the Department of Labor's regulation defining professional employees fit the job requirements and desired educational background of probation officers.

On the present record, we cannot say that deputy sheriffs are professional, executive, or administrative employees excluded from coverage. Consequently, we find that they are entitled to the benefits of the act.

■ Are they employed by the commission, the sheriff, or both? The commission, positing the unassailable legal premise that it can lawfully perform only those acts authorized by law, says that it has no authority to employ deputy sheriffs, that its only statutory authority to hire, pay and discharge employees pertains to its own staff. W.Va.Code, 7–1–3m.[4] The commission argues that in counties having more than twenty-five thousand population, such as Marion County, all full-time deputy sheriffs are appointed by the sheriff according to the deputy sheriffs' civil service law. W.Va.Code, 7–14–1, *et seq.* [1971].[5] It

---

**4.** W.Va.Code, 7–1–3m states:

"In addition to all other powers and duties now conferred by law upon county courts [now commissions] or tribunals in lieu thereof ... such courts are hereby empowered to employ, fix compensation for and discharge such clerical, stenographic, technical, professional and other personnel, including specialists and consultants, as may from time to time be necessary to aid such courts in exercising their powers or discharging their duties as provided by law and including a county administrator, to coordinate the court's activities and to do such other things as the court may direct ...."

**5.** W.Va.Code, 7–14–1 reads:

"*Notwithstanding the provisions of article three [§ 6–3–1 et seq.], chapter six, and article seven [§ 7–7–1 et seq.], chapter seven of this Code, all appointments and promotions of full-time deputy sheriffs, as defined in section two [§ 7–14–2] of this article,* in the offices of sheriffs of counties of twenty-five thousand population or more, shall be made only according to qualifications and fitness to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. On and after the effective date of this article [July 1, 1971], no person except the chief deputy shall be appointed, promoted, reinstated, removed, discharged, suspended or reduced in rank or pay as a full-time deputy sheriff, as defined in said section two, of any county in the State of West Virginia subject to the provisions hereof, *in any manner or by any means other than those prescribed in this article.*" (Emphasis supplied.)

W.Va.Code, 7–14–2, as amended in 1978, states:

"(a) For the purpose of this article:

"(1) 'Appointing officer' or 'appointing sheriff' shall mean the sheriff of the county in which the appointment of a deputy sheriff shall be made pursuant to this article; and

"(2) 'Deputy sheriffs' or 'deputies' shall mean persons appointed by a sheriff as his deputies whose primary duties as such deputies are with-

therefore contends that it is not now, if it ever was, an employer of deputy sheriffs subject to liability for failure to pay overtime wages.[6]

The sheriff also wants to avoid liability and says that the commission is the employer for purposes of the act because it controls funding for his office. Unless the commission provides money to pay overtime compensation, he cannot compensate deputy sheriffs for hours worked in excess of the statutory maximum.

The deputies argue that the sheriff and commission are joint employers within the meaning of W.Va.Code, 21–5C–1(e). If a sheriff does not include in his budget request funding for overtime hours, and a county commission does not provide such funds, no overtime benefits can be paid.

We agree with the deputy sheriffs that the commission and sheriff are joint employers. The commission's argument ignores controlling statutory language and focuses too narrowly on who hires deputies. Section 1 of the act defines the following pertinent terms:

> (e) "Employer" includes the State of West Virginia, its agencies, departments and *all its political subdivisions, any individual,* partnership, association, public or private corporation, or any person or group of persons acting directly or indirectly in the interest of any employer in relation to an employee .... (Emphasis supplied.)

■ Section 1(e) defines "employer" to include all political subdivisions of the State of West Virginia. A county commission, like a municipality, *see, e.g., Kucera v. City of Wheeling,* 153 W.Va. 531, 170 S.E.2d 217 (1969), is the governing body of a political subdivision. County commissions have constitutional and legislative authority to supervise and administer "the internal police and fiscal affairs of their counties." W.Va. Const. art. IX, § 11; W.Va.Code, 7–1–3. *See, e.g., State ex rel. County Court v. Arthur,* 150 W.Va. 293, 145 S.E.2d 34 (1965).[7] In *Kucera,* we noted that:

> "The attributes which are generally regarded as distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possesses authority for subordinate self-government through officers selected by it." *Dugas v. Beauregard,* 155 Conn. 573, 236 A.2d 87. *Id.* 153 W.Va. at 536, 170 S.E.2d at 220.

Although it is true that a sheriff can hire and fire individual deputy sheriffs without the commission's consent, and as such acts as an employer by the explicit language of the act, the sheriff "does not have the complete or the exclusive control of the internal police affairs of the county". *Hockman v. County Court of Tucker,* 138 W.Va. 132, 75 S.E.2d 82 (1953). A county commission in exercising its general control of the fiscal affairs of the county, determines the overall amount of money to be allowed to the sheriff's office, including an amount for compensation of deputy sheriffs. W.Va.Code, 7–7–7. The term "employ", as noted earlier, is expansively defined to include not just the act of hiring, but also the act of permitting a person to

in the scope of active, general law enforcement and as such are authorized to carry deadly weapons, patrol the highways, perform police functions, make arrests or safeguard prisoners. This definition shall not be construed to include any person or persons whose sole duties shall be the service of civil process and subpoenas as provided in section fourteen [§ 50–1–14], article one, chapter fifty of this Code, but such exclusion shall not preclude the service of civil process or subpoenas by deputy sheriffs covered by the provisions of this article."

6. W.Va.Code, 6–3–1(a)(2) provides:
  "(2) A sheriff, surveyor of lands, or assessor may, with the consent of the county court duly entered of record, appoint any person or persons his deputy or deputies."
  *See also* W.Va.Code, 7–7–7 at fn. 8, *infra.*

7. Although broad police powers have been expressly conferred on county commissions, they are not instrumentalities of the state such as to bring them within the state's constitutional immunity from suit. *Boggs v. Board of Education,* 161 W.Va. 471, 244 S.E.2d 799 (1978). Nor do county commissions possess common-law governmental immunity from tort liability. *Gooden v. County Commission of Webster County,* 171 W.Va. 130, 298 S.E.2d 103 (1982).

work. The act, then, by its terms, includes a county commission within the definition of an employer, even when the commission need not consent to hiring.

County commissions also set the budgets for offices of other county officials. W.Va. Code, 7–7–7 [1982].[8] If the commission's arguments were accepted, many county employees employed by other officials would be deprived of the benefits of the act, against the clear intent of the legislature.

In *State ex rel. Cabell County v. Dunfee*, 163 W.Va. 539, 258 S.E.2d 117 (1979), we held that a sheriff is prohibited by the provisions of W.Va.Code, 7–7–7, from giving deputy sheriffs a raise in salary, if the increase would cause expenditures to exceed his budget as set by the county commission.

Several statutory provisions buttress our conclusion, tending to make the commission a joint employer. A county commission is responsible for financing training programs that deputy sheriffs' civil service commissions must establish or prescribe. W.Va.Code, 7–1–3b. W.Va.Code, 7–14–17a, provides, as pertinent here, that the "county commission of each county shall allow the sheriff's deputies *in its employ* vacation time accrued in the following manner ...." (Emphasis supplied.) Similarly, W.Va.Code, 7–14–17b, provides that the "county commission of each county shall allow the sheriff's deputies sick leave with pay ...." County commissions are also vested with authority to purchase, install and maintain radio mobile communication equipment and appliances for the use of the sheriff and his deputies. W.Va.Code, 7–1–3b.

**8.** W.Va.Code, 7–7–7 [1982] provides, as relevant here:

"The county clerk, circuit clerk, joint clerk of the county commission and circuit court, if any, sheriff, county assessor and prosecuting attorney, by and with the advice and consent of the county commission, may appoint and employ, to assist them in the discharge of their official duties for and during their respective terms of office, assistants, deputies and employees. The county clerk may designate one or more of his assistants as responsible for all probate matters.

"The county clerk, circuit clerk, joint clerk of the county commission and circuit court, if any, sheriff, county assessor and prosecuting attorney shall, prior to March second of each year, file with the county commission a detailed request for appropriations for anticipated or expected expenditures for their respective offices, including the compensation for their assistants, deputies and employees, for the ensuing fiscal year.

"Any deputy sheriff who is required to work on a holiday as observed by county employees generally shall be compensated for such time by being given a substitute day off.

"The county commission shall, prior to March twenty-ninth of each year by order fix the total amount of money to be expended by the county for the ensuing fiscal year, which amount shall include the compensation of county assistants, deputies and employees. Each county commission shall enter its order upon its county commission record.

"The county clerk, circuit clerk, joint clerk of the county commission and circuit court, if any, sheriff, county assessor and prosecuting attorney shall then fix the compensation of their assistants, deputies and employees based on the

total amount of money designated for expenditure by their respective offices by the county commission and the amount so expended shall not exceed the total expenditure designated by the county commission for each office.

"The county officials, in fixing the individual compensation of their assistants, deputies and employees and the county commission in fixing the total amount of money to be expended by the county, shall give due consideration to the duties, responsibilities and work required of the assistants, deputies and employees and their compensation shall be reasonable and proper.

"After the county commission has fixed the total amount of money to be expended by the county for the ensuing fiscal year and after each county official has fixed the compensation of each of his assistants, deputies and employees, as provided in this section, each county official shall file prior to June thirtieth, with the clerk of the county commission, a budget statement for the ensuing fiscal year setting forth the name, or the position designation if then vacant, of each of his assistants, deputies and employees, the period of time for which each is employed, or to be employed if the position is then vacant, and his monthly or semimonthly compensation.

. . . . .

"Each county official named in this section shall have the authority to discharge any of his assistants, deputies or employees by filing with the clerk of the county commission a discharge statement specifying the discharge action: Provided, that no deputy sheriff appointed pursuant to the provisions of article fourteen [§ 7–14–1 et seq.], chapter seven of this Code, shall be discharged contrary to the provisions of that article."

Although the commission and sheriff are joint employers, this does not necessarily mean that both are liable under the act. The facts of each case must be considered. If, for example, a commission provides funds for overtime compensation, but a sheriff for an invalid reason refuses to pay overtime compensation, then only the sheriff would be the responsible employer.

Accordingly, we answer each of the certified questions in the affirmative, and reverse the rulings of the circuit court.

Reversed and remanded.