456 S.E.2d 1

**Curniff ROWE, et al., Appellants,**

v.

**GRAPEVINE CORPORATION, et al., Appellees.**

**No. 22512.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided Feb. 16, 1995.

Garry G. Geffert, West Virginia Legal Services Plan, Inc., Martinsburg, and Bruce Goldstein, Farmworker Justice Fund, Inc., Washington, D.C., for Rowe, et al.

Richared G. Gay, Berkeley Springs, for Leavitt Orchard.

John M. Simpson, Jacqueline R. Depew, Fulbright & Jaworski, Washington, D.C., and Mark Jenkinson, Hunt, Lees, Farrell & Kessler, Martinsburg, for Dirting, Ellis, Huyett, Kilmer and Lutnam.

NEELY, Chief Justice:

This appeal is from a summary judgment entered by the Circuit Court of Berkeley County. Although the underlying case is complex both factually and legally, the narrow issues before us today are extraordinarily simple: (1) Did the circuit court err by granting summary judgment in favor of the individual defendants on the grounds that the individual defendants in this case were not "employers" under the West Virginia Wage Payment and Collection Act, *W.Va.Code* 21–5–1 [1987], *et seq.* and (2) did the circuit court err in granting summary judgment on the grounds that insofar as it concerned the individual defendants, Count III of the plaintiffs' complaint is subject to the five-year statute of limitations set forth in *W.Va.Code* 55–2–6 [1923]. We conclude that the circuit court erred in both these legal rulings and, therefore, reverse and remand for further proceedings.

Plaintiffs in this case are foreign nationals who, at various times, worked temporarily as apple pickers in West Virginia from 1983 through 1989 pursuant to the United States Department of Labor's temporary foreign worker program. Plaintiffs were hired by Tri–Country Growers, Inc., a predecessor of defendant Grapevine Corporation (hereafter

collectively referred to as "Grapevine"). Grapevine is a corporation organized under the laws of the State of West Virginia. The individual defendants are orchardists who were shareholders in Grapevine during the 1983 through 1989 period. Plaintiffs picked apples in the orchards of the individual orchardist defendants.

Plaintiffs' employment relationship with Grapevine was contractual. The only signatories to the employment contracts at issue in this case were plaintiffs, Grapevine and a representative of the West Indies Central Labour Organization. None of the shareholders of Grapevine who are defendants in these cases was a signatory to those contracts. Plaintiffs contend, *inter alia*, that certain monies deducted from their pay were invalid wage assignments because they allegedly did not meet the requirements of the West Virginia Wage Payment and Collection Act (hereinafter WPCA), *W.Va.Code* 21–5–1 [1987] *et seq.* For example, plaintiff Pinnock claims that defendants Charles and Dorothy Leavitt and Del Orchard, Inc., violated the WPCA by withholding $6.17 for meals and $12 for insurance in 1989. Plaintiff Thomas makes a similar claim against the Leavitt defendants and Del Orchard, Inc. of $6.17 for meals and $4 for insurance in 1989.

The wage withholdings at issue were made by Grapevine pursuant to written instruments signed by Grapevine and each plaintiff. None of the individual defendants, namely, Dirting, Ellis, Huyett, Kilmer, Lutman, Charles and Dorothy Leavitt or Del Orchard, Inc., was a signatory to any withholding document. None of the individual defendants received any of the sums that were deducted.

During the period at issue in this case, Grapevine recruited and hired plaintiffs, sending a representative to Jamaica for that purpose. None of the individual defendants made such trips. Grapevine had all of the authority and did all of the work regarding payment to the plaintiffs. The individual defendants' only responsibility was to keep track of the hours worked by each worker. This information was provided to Grapevine, which determined how often and in what manner plaintiffs were paid, paid all taxes and made all the deductions required by law. For the purposes of this appeal, we assume

that the individual defendants, Dirting, Ellis, Huyett, Kilmer, Lutman, Charles and Dorothy Leavitt and Del Orchard, Inc., had no role whatsoever in the withholding of any funds from the plaintiffs and, in particular, said defendants had no involvement in the deductions of any amounts for insurance, transportation, meals or otherwise. The individual defendants paid a fee to Grapevine out of which Grapevine paid the plaintiffs.

Grapevine arranged for and paid the cost of transporting the plaintiffs to the United States. Grapevine provided meals and housing to the plaintiffs in facilities owned, operated and maintained by Grapevine, and Grapevine appeared as the employer on forms filed with the federal government in connection with the temporary foreign worker program. Grapevine was the employer that obtained workers' compensation coverage for the plaintiffs and paid the premiums rather than the individual defendants.

However, and this is the cynosure of our ruling today, *the individual defendants supervised plaintiffs when plaintiffs worked in the individual defendants' orchards.* Grapevine also had supervisory authority and exercised it by sending a representative to the orchards, but if an individual defendant was dissatisfied with a worker's performance, his only recourse was to complain to Grapevine. Only Grapevine had the authority to fire the worker.

Plaintiffs' complaints in these cases all concern alleged acts or omissions on the part of Grapevine relating to invalid wage assignments and other matters pertaining to plaintiffs' pay. But, unfortunately for the individual defendants involved in this case, a careful reading of the record reveals that it was, indeed, the individual defendants who took primary responsibility for the day-to-day supervision and management of the plaintiffs when they were employed in the orchards of West Virginia and it was on behalf of the individual defendants that Grapevine exerted itself. The individual defendants transported workers to the fields of the individual defendants, supervised the workers during all the hours that the workers picked the crops, and transported the workers back to the labor camp in the evening. Furthermore, the workers performed all of their tasks on the individual defendants' property with the enthusiastic cooperation, knowledge, and encouragement of the individual defendants.

■ *W.Va.Code* 21–5–1 [1987] defines "employee" as "… any person suffered or permitted to work by a person, firm or corporation."[1] Our simple conclusion in this case is that the plaintiffs were "suffered or permitted" by the individual defendants to work on individual defendants' property and thus the individual defendants are joint employers of the plaintiffs along with Grapevine. *Amoroso v. Marion County Comm'n,* 172 W.Va. 342, 305 S.E.2d 299 (1983); *McCarty v. Harless,* 181 W.Va. 719, 384 S.E.2d 164 (1989); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Purtell v. Philadelphia & Reading Coal & Iron Co.,* 256 Ill. 110, 99 N.E. 899 (1912). *Hodgson v. Griffin & Brand of McAllen, Inc.,* 471 F.2d 235, 237 (5th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973) *quoting, Rutherford Food Corp., su-*

1. *W.Va.Code* 21–5–1 [1987] provides in relevant part:

As used in this article:

(a) The term "firm" includes any partnership, association, joint-stock company, trust, division of a corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, or officer thereof, employing any person.

(b) The term "employee" or "employees" includes any person suffered or permitted to work by a person, firm or corporation.

(c) The term "wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. As used in sections four [§§ 21–5–4, 21–5–5, 21–5–8a, 21–5–10, and 25–5–12], five, eight-a, ten and twelve of this article, the term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict the provisions of this article.

\* \* \* \* \* \*

(m) The term "employer" means any person, firm or corporation employing any employee.

(n) The term "doing business in this state" means having employees actively engaged in the intended principal activity of the person firm or corporation in West Virginia.

*pra,* 331 U.S. at 730, 67 S.Ct. at 1477 (determination of who is "an employer of harvest workers does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.' ") Indeed, it is undisputed that Grapevine was the employing agent of the individual defendants and that its activities were undertaken for and on behalf of the individual defendants in this case.[2]

■ We find that the West Virginia Wage Payment and Collection Act, *W.Va.Code* 21–5–1 [1987], *et seq.* is applicable to any firm that suffers or permits a person to work; therefore, when foreign agricultural workers are recruited by a corporation whose only activity is the hiring, transporting, feeding, housing and payment of workers who perform all their services for individual growers, the individual growers are joint employers of the workers for the purposes of the West Virginia Wage Payment and Collection Act.

■ When the agent of an employer enters into a written contract with a worker and the object of the written contract is to provide labor to the employer, the ten-year statute of limitations period for an action on a written contract, *W.Va.Code* 55–2–6 [1923], applies to an action against both the employer and the agent.[3]

■ If, then, Grapevine is the employing agent of the individual defendants, the written contract between Grapevine and the workers was entered into by the individual defendants' agent for the benefits of the individual defendants and it is the ten-year con-

tract statute of limitations that applies to this case.[4]

Accordingly, the judgment of the Circuit Court of Berkeley County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

**2.** "An agent is one who represents another, called principal, in dealings with third persons," 1A *Michie Juris.,* Agency § 2 (1993). *See supra* pp. 2–3 for a description of Grapevine's actions on behalf of the individual defendants. *See U.S. v. Rapoca Energy Co.,* 613 F.Supp. 1161 (W.D.Va. 1985) (mining companies having no economic interest in coal are agents for owners); Restatement (Second) of Agency § 2 (1957).

**3.** *W.Va.Code* 55–2–6 [1923] provides in relevant part:

Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: ... [I]f it be upon any other contract in writing under seal,

within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years....

**4.** *Raney v. Barnes Lumber Corp.,* 195 Va. 956, 966, 81 S.E.2d 578, 584 (1954) said:

Agency has been defined as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act.... The law indulges no presumption that an agency exists. On the contrary one is legally presumed to be acting for himself and not as the agent of another.

*See also* 1A *Michie's Juris.,* Agency § 23 (1993); Restatement (Second) of Agency §§ 147, 148 and 149 (1957).