576 S.E.2d 532

**Basil R. LEGG, Jr., Plaintiff Below, Appellant,**

v.

**JOHNSON, SIMMERMAN & BROUGHTON, L.C., Defendant Below, Appellee.**

**No. 30591.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Dec. 3, 2002.

Mark D. Moreland, Esq., Mark D. Moreland, L.C., Charleston, West Virginia, Attorney for Appellant.

William J. Leon, Esq., Eckert Seamans Cherin & Mellott, PLLC, Morgantown, West Virginia, Attorney for Appellee.

PER CURIAM:

The appellant in this proceeding, Basil R. Legg, Jr., an attorney who had a contractual relationship with the law firm of Johnson, Simmerman & Broughton, L.C., sued the law firm, the appellee here, after he terminated the relationship. In suing the firm, the appellant claimed that the contractual relationship was that of employer/employee, and that the firm had violated the Wage Payment and Collection Act, W. Va.Code 21–5–1, et seq., in failing to pay him, the employee, moneys which he claimed were due upon his termination. He also claimed that the firm had breached its contract with him and had committed fraud upon him. After discovery in the case, the Circuit Court of Harrison County concluded that the appellant was not entitled to the protections of the Wage Payment and Collection Act, and the circuit court granted the firm summary judgment on the Wage Payment and Collection Act claim.

The circuit court also dismissed the appellant's breach of contract and fraud claims.

On appeal, the appellant claims that the circuit court erred in granting summary judgment on the Wage Payment and Collection Act claim since, he asserts, that the evidence demonstrates, or at least raises a question of fact as to whether, he was an employee. He also claims that the circuit court erred in dismissing his breach of contract and fraud claims since, he asserts, the facts relating to those claims had not been adequately developed or argued before the court.

## I.

### FACTS

On July 1, 1996, the appellant, an attorney, began working in the law office of the appellee, Johnson, Simmerman & Broughton, L.C., apparently under an oral agreement. On July 12, 1996, he wrote a letter to the members of the firm in which he attempted to memorialize the terms of his relationship with the firm. The letter commenced:

> You asked that I set forth in writing the terms under which I have agreed to become associated with the law firm of Johnson, Simmerman & Broughton, L.C. In accordance with our discussion on June 18, 1996, it is my understanding that the terms of our arrangement are as follows:

He further stated that his initial status would be that of an "employee/associate of the firm."

In the next paragraph, the appellant stated that all net costs associated with the operation of "the office" from July 1, 1996, forward, would be shared on a one-fourth basis among each of the three "partners" of the firm and himself. The letter specifically stated: "All net costs associated with the operation of the office, from July 1, 1996 forward, shall be shared on a one-fourth (1/4) basis, among each of you and myself." In a footnote, the appellant said: "Net costs are defined as gross expenditures of the corporation, less income from paralegal production, less net income from client costs, such as copies, etc." The appellant proceeded to

state that his take from the operation would be determined by taking his gross income, less "my one-fourth (1/4) share of expenses." He stressed: "Expenses incurred by the partnership shall not be included in this calculation of the expenses to be shared by the four (4) of us. Expenses for my CLE, Bar dues, auto expense not reimbursed by clients, medical, dental and life insurance, 401K contributions, and non-billed office costs are to be paid in full by me."

Two other provisions of the letter are relevant to the present appeal. One capped the appellant's share of net office expenses at $25,000 for the first six months of his association with the firm. Specifically, the agreement said: "[U]nder no circumstances will my contribution to the expenses or overhead of the office exceed $25,000.00, total, for the remainder of calendar year 1996." The other provided that if he terminated his arrangement with the appellee: "I will not be entitled to any credit for revenue received from paralegal production after the date of termination, but will be credited with client costs advanced and client expenses advanced . . . ."

The letter concluded with the statement that the letter set forth the appellant's understanding of the terms of agreement "to govern my association with the firm." He asked the other members of the firm to review the letter and notify him immediately if he had misunderstood what the parties believed they had agreed to.

It does not appear that the other parties disagreed with the letter, and the appellant proceeded to work in the law office until February 28, 1997.

While working in the firm, it appears that the appellant was responsible for acquiring his own clients. He had discretion as to the hours he worked. He retained control over the manner in which he provided professional services to his clients, and it appears that the firm exercised no control over the details of his work.

After leaving the office, the appellant did not receive, in what he considered a timely manner, the payments to which he believed that he was entitled. Specifically, he believed that the firm had failed to calculate and apply the cap on office expenses for the year 1996 properly. He also believed that he had not received proper credit for non-billed work in progress and client costs advanced by the appellant. As a consequence, the appellant filed the complaint instituting the present action.

In the first count of the complaint, as subsequently amended, he claimed that the failure of the appellee to pay him sums due constituted a violation of W. Va.Code 21–5–1, et seq., the West Virginia Wage Payment and Collection Act. In the second count of the complaint, the appellant alleged that by failing to pay him all sums due, the firm breached the parties' contract, and, in the third count of his amended complaint, he claimed that the firm had committed fraud. The first fraud allegation was:

> The actions of Defendant [appellee] in this case constitute the tort of fraud. By inducing Plaintiff [appellant] to enter into a contract with the intent that Defendant would not fulfill its obligations thereunder and by providing Plaintiff with false and misleading financial information, the actions of the Defendant was intentional, malicious, willful, wanton, or reckless, and characterized by a complete and total disregard of the rights of the Plaintiff.

In his later fraud paragraphs he, without alleging that he had actually relied on such matters to his detriment, claimed that the making of false statements by the firm constituted fraud.[1]

---

1. The following are typical of the appellant's later fraud paragraphs:

    24. The actions of defendant in its failure to pay to the plaintiff money the defendant knew was rightfully owed to the plaintiff after he left the defendant's employment constitute the tort of fraud; such monies include monies received by the defendant from clients for advanced costs and expenses and accounts receivable generated by the plaintiff's work for which the plaintiff was to be compensated in full upon his departure from the defendant's employment.

    25. The actions of the defendant in this case, which continue to the date of filing this Complaint, of failing to pay the plaintiff monies that it not only knows is due to the plaintiff, but which monies the defendant has admitted are due to the plaintiff, constitute the tort of fraud.

During the subsequent development of the case, the appellant argued that under his contract with the firm, he became an employee of the firm. The firm, on the other hand, took the position that the appellant was not its employee, but that he became associated with the firm on a cost sharing basis and that, under the circumstances, the West Virginia Wage Payment and Collection Act did not apply.

After considerable development of the record, the appellant moved for summary judgment on the Wage Payment and Collection Act claim. The circuit court examined the various documents filed in the case, and on September 17, 2001, not only denied the appellant's motion, but granted the firm summary judgment and dismissed the firm from the case. In reaching its decision, the court noted that the appellant had failed to show that he was the firm's employee. The court stated:

> [T]he Court is unconvinced that a master-servant relationship arose from this employment agreement. The facts presented show that the employment arrangement existed to allow the plaintiff [appellant] the opportunity to start his practice. The record also shows that he worked independently of the defendants. This arrangement allowed the defendants [appellee] to only benefit from sharing the daily office operating expenses with him. Thus, the Court concludes that the Act was not meant to protect the plaintiff because he is not seeking to collect money owed to him which arose from a master-servant relationship with the defendants [appellee].

The court also found that the money allegedly owed did not qualify as wages under the West Virginia Wage Payment and Collection Act. In conclusion, the court stated:

> In essence, the plaintiff paid the defendants for his share of the overhead and is now claiming the excess from those payments in this suit. Therefore, the Court holds that the plaintiff is seeking reimbursement rather than compensation or benefits acquired for his services. Accordingly, this Court finds that the WPCA has not fashioned a remedy for the plaintiff's

particular claim. Hence, the plaintiff's second contention is without merit.

As has previously been stated, the appellant argues that the circuit court erred in concluding that he was not an employee for the purposes of the Wage Payment and Collection Act. He also claims that the circuit court erred in dismissing his breach of contract and fraud claims when the case relating to those claims had not been developed and argued before the court.

## II.

## STANDARD OF REVIEW

■ In a summary judgment appeal, such as the present one, Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), indicates: "A circuit court's entry of summary judgment is reviewed *de novo.*"

■ Additionally, in Syllabus Point 4 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court has stated that: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."

## III.

## DISCUSSION

### A. *The Appellant's Wage Payment and Collection Act Claim*

■ The first issue in the present appeal is whether the trial court erred in concluding that the appellant was not an employee within the meaning of West Virginia's Wage Payment and Collection Act, W. Va.Code 21–5–1, *et seq.,* and whether the court erred in granting the firm summary judgment on that issue.

The appellant argues that W. Va.Code 21–5–1, *et seq.,* requires a firm owing an "employee" wages to pay the wages within a specific period of time and that the failure to do so constitutes a violation of the Act and justifies the imposition of sanctions provided for by the Act. The essential part of the

Wage Payment and Collection Act in issue, W. Va.Code 21–5–4(c) provides:

> Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages no later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least one pay period's notice of intention to quit the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.

The appellant also argues, of course, that he was an employee within the meaning of the Act. The firm, on the other hand, argues that the appellant was not an employee within the meaning of the Wage Payment and Collection Act, and that, as a consequence, the Act and its provisions do not apply to the situation at hand.

In asserting that he should be considered an employee, the appellant, rather forcefully, states in his brief: "The key issue in this Count is that *this case is a WPCA* [Wage Payment and Collection Act] *case, it was filed as a WPCA case and it should be decided as a WPCA case.*" (Emphasis in the original.)

This Court believes that the appellant is completely correct in asserting that this Wage Payment and Collection Act claim should be decided under Wage Payment and Collection Act law, but notes that in his argument he points to circumstances which would suggest that he could be an employee under state or federal tax law or that he must be an employee because of statutory provisions relating to legal corporations contained in W. Va.Code 30–2–5.

■ The Court also makes one other observation. Although the agreement in the present case refers to the appellant becoming an "employee/associate" of the firm, this Court does not believe that the term is dispositive of the issues in the case, for: "The meaning of a word is to be considered in the context in which it is employed. The meaning of a word thus is to be ascertained from a reading of the entire contract, rather than from a consideration of that one word alone . . . ." *See,* 17A C.J.S. *Contracts* § 318 (1999).

*See also, Columbia Gas Transmission Corporation v. E.I. du Pont de Nemours & Company,* 159 W.Va. 1, 217 S.E.2d 919 (1975).

■ When the Wage Payment and Collection Act itself is examined, the Court notes that one provision, W. Va.Code 21–5–1(b), generally defines "employee" for the purposes of the Act. That provision states: "The term 'employee' or 'employees' includes any person suffered or permitted to work by a person, firm or corporation." This provision is different from and broader than the common law definition of an "employee." *See, Rowe v. Grapevine Corporation,* 193 W.Va. 274, 456 S.E.2d 1 (1995). And it was adopted to further an important public policy: "This public policy requires employers to pay the wages of working people who labor on their employer's behalf." *Mullins v. Venable,* 171 W.Va. 92, 96, 297 S.E.2d 866, 871 (1982).

As has previously been stated, the agreement in the present case entitled the appellant to his gross income, less his one-fourth share of "expenses." "Expenses," the Court believes, were equated with costs associated with the operation of the office, since it was expressly stated that "expenses incurred by the partnership shall not be included in this calculation of the expenses to be shared by the four (4) of us," and since they excluded the appellant's CLE, Bar dues, etc. At the very least, "expenses" deductible from the appellant's gross income excluded any partnership (appellee) expenses which could not be classified as "costs associated with the operation of the office."

An examination of the office-cost provisions shows that the appellant undertook to pay (through a deduction from his gross income) one-fourth of the net costs of the office. Net costs of the office were defined as gross costs of the office, less the income generated by the office itself—that is, income from paralegal production and income from office costs reimbursed by clients, such as copy costs. Also, as noted previously, the appellant had his own clients, chose his own work hours, and it appears that he retained complete control over the way in which he provided services to his clients.

■ Although the Wage Payment and Collection Act defines an "employee" as "any person suffered or permitted to work by a person, firm or employee," the Court does not believe that the definition should be taken so literally as to reach an absurd result, and the law itself indicates that statutes should not be construed to reach absurd results. *See,* 82 C.J.S. *Statutes* § 310 (1999). For instance, the Court does not believe that the Legislature intended that one who rents an office from a landlord, and who becomes involved in a monetary dispute with the landlord, should be considered an "employee" of the landlord under the Wage Payment and Collection Act simply because the landlord suffers or permits the individual to work out of the rented office. Similarly, the Court does not believe that an office-sharing arrangement, such as the one in the present case, alone, makes the sharing party an "employee" for the purposes of the Wage Payment and Collection Act.

As stated in *Mullins v. Venable, supra,* the policy behind the Wage Payment and Collection Act is to require employers to pay the wages of working people who labor on the employer's behalf. In the situation presently before the Court, it appears that the appellant labored on his own behalf; he had acquired his own clients; he controlled and did his own work; and, he simply shared the benefits and expenses of an office with the firm. In light of this, the Court believes that the circuit court did not err in concluding that the Wage Payment and Collection Act did not apply to the appellant's claims and did not err by granting the firm summary judgment on the Wage Payment and Collection Act claim.

### B. *The Appellant's Breach of Contract Claim*

■ The appellant also asserted in his amended complaint that the firm breached its contract with him.

Although the appellant's arguments on this point are rather unclear, he apparently is concerned over two points. As has previously been explained, the contract between the appellant and the firm placed a "cap" on expenses for the year 1996. It appears that in December 1996, the appellant felt that he had reached the cap, but that the firm had continued to charge him with expenses. He lodged a complaint over the matter, and although, in a subsequent statement, the cap was purportedly applied, he claims that the firm changed the method of computing so as to avoid the intended application of the cap. According to the appellant's brief:

> JSB [the firm] attempted to re-write the cap by making it a "net cap," rather than a "cap," by arbitrarily subtracting the amount that Legg's ledger had been credited for the item of paralegal income. This item, consistent with the employment agreement, was income and had always been treated as such; now, JSB was using the same item to *decrease* income or wages to Legg. By this accounting maneuver Legg had seemingly not paid over $25,000.00 in expenses/overhead that he had already paid. This accounting trickery, which is part of the allegation of fraud in Count III of the Complaint, was the sole stated basis for JSB for not paying Legg over $25,000.00 in wages.

The appellant's second basis for claiming breach of contract and fraud appears to arise out of the separation provisions of the parties' agreement. The appellant claims that under the agreement: "[H]e would receive all outstanding fees billed to clients he had represented and twenty-five percent (25%) of all client expenses advanced (but not yet reimbursed); he would no longer be entitled to twenty-five percent (25%) of the paralegal income." The appellant argues that the firm did not properly implement this provision and, as a result, he was deprived of over $50,000 which was rightfully his.

In examining the appellant's breach of contract claims, this Court believes that the "cap" question rather obviously grows out of a disagreement between the parties as to how the $25,000 cap for the year 1996 was to be calculated. After examining the "cap" language, the Court believes that its meaning is not absolutely clear, or at the very least, full development of the facts on what the parties intended and actually did is desirable to clarify the application of the law. Similarly, the Court believes that further development is desirable to clarify the parties' inten-

tion relating to the separation provision and its final application. Under such circumstances, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* indicates that summary judgment is inappropriate.

### C. *The Appellant's Fraud Claim*

In asserting fraud in the present case, it appears that the appellant is claiming two things. First, he is asserting that the firm, by providing him with misleading financial statements, committed fraud. Second, he is claiming that the firm made material misrepresentations of material fact to induce him to enter into the agreement in creating the parties' relationship.

In Syllabus Point 1 of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), this Court enumerated the elements of fraud. The Court said:

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 (1927).

In examining the amended complaint, as well as the other papers in the present case, it appears that the appellant believes that because what he characterizes as false statements of monies owed were provided to him, or that monies due were not paid to him, fraud was committed. As indicated in *Lengyel v. Lint, id.,* more than a false statement is required to establish fraud. It is necessary that a plaintiff relies upon the statement and that he is damaged because of his reliance. In most of the paragraphs of the appellant's complaint relating to statement of money due or paid, the appellant does not allege that he relied upon the statements to his detriment. To the contrary, the overall evidence in this case, as well as the fact that he brought the present action to collect monies which he believed were due, shows that he challenged, rather than relied upon, the statements and rather plainly did not rely upon the statements to his detriment.

In one paragraph of his fraud count, the appellant does suggest that the firm's statements resulted in detrimental reliance. That paragraph complains that the firm injured him: "By inducing Plaintiff [appellant] to enter into a contract with the intent that Defendant would not fulfill its obligations thereunder . . . ."

In *Croston v. Emax Oil Company,* 195 W.Va. 86, 464 S.E.2d 728 (1995), this Court indicated that a false promise could not support a fraud claim. The Court said in Syllabus Point 3 of *Croston v. Emax Oil Company, id.:* " 'Fraud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or his property.' Syllabus point 1, *Love v. Teter,* 24 W.Va. 741 (1884)."

In the present case, the appellant is apparently claiming that promises made by the firm induced him to enter into the agreement with the firm. The plain holding of the *Croston* case is that fraud cannot be predicated on a promise.

After examining the appellant's fraud assertions and the evidence in this case, the Court believes that the circuit court properly disposed of the fraud claims in this case.

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Harrison County is affirmed on the Wage Payment and Collection Act and fraud claims, and is reversed on the breach of contract claim, and this case is remanded to the circuit court with directions that the court proceed with the development of the case on the breach of contract claim.

Affirmed, in part, reversed, in part, and remanded with directions.

Chief Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.