527 S.E.2d 814

**Curniff ROWE, et al., Plaintiffs Below, Appellants,**

v.

**GRAPEVINE CORPORATION, et al., Defendants Below, Appellees.**

No. 26353.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1999.

Decided Dec. 15, 1999.

Gary G. Geffert, Bruce N. Goldstein, Mountain State Justice, Inc., Attorneys for Appellants.

David H. Webb, Keyser, West Virginia, Attorney for Grapevine Corporation.

Mark Jenkinson, Douglas & Jenkinson, Martinsburg, West Virginia, John M. Simpson, Fulbright & Jaworski, Washington, D.C., Attorneys for Douglas Dirting, John W. Cushwa, J. David Cushwa, Blue Ridge View Orchard Co., Inc., William Kilmer, Lloyd Lutman, the Estate of L. Randolph Huyett, Marvin McK. Ellis, Gary Lutman and Russell Pitzer.

Patrick G. Henry, III, PLLC, Martinsburg, West Virginia, Attorney for Cumberland Valley Orchard, Inc., Bruce E. Eyler, and Phillip Eyler.

Stephen R. Fielder, Bunker Hill, West Virginia, Attorney for Beallair Orchards, Inc., A. Elwood Butler, B. Bruce Butler, John Porterfield, Porterfield Orchards, Inc., Mary Frances Hockman, and Twin Ridge Orchard Co., Inc.

Richard G. Gay, Berkeley Springs, West Virginia, Attorney for Henry Davenport, Charles O. Leavitt, Dorothy Leavitt, Del Orchard, Inc.

Manis H. Perkins, Jr., pro se.

Louis B. Athey, pro se.

STONE, Judge:

This consolidated appeal[1] involves the dismissal through summary judgment of claims brought by thirty-seven migrant farm workers under the West Virginia Wage Payment and Collection Act ("Act"), West Virginia Code §§ 21–5–1 to –18 (1996 & Supp.1999). By order dated December 30, 1998, the Circuit Court of Berkeley County determined that the Plaintiffs' claims, which covered the period of 1983–1987, were barred under principles of res judicata since those claims had previously been dismissed in an administrative proceeding before the United States Department of Labor ("Department of Labor"). With regard to the claims for 1988–1989, the lower court ruled that those claims were subject to a settlement agreement entered into between the Department of Labor and Defendant Grapevine Corporation ("Grapevine"), and were, accordingly, precluded from further consideration. In addition, the lower court determined that the Act did not apply to Plaintiffs' claims that were predicated on a contractual provision guaranteeing them work and/or pay for three-fourths of the contract period ("three-fourths guarantee")[2] and dismissed summarily the individual wage assignment claims brought by each of the named Plaintiffs. After a thorough review of

---

**1.** The other four cases are styled as *Lewis, et al. v. Grapevine, et al.* Civil Action No. 91–C–877; *Mills, et al. v. Grapevine, et al.,* Civil Action No. 92–C–891; *Baker, et al. v. Grapevine, et al.,* Civil Action No. 93–C–951; and *Gardener, et al. v. Grapevine, et al.,* Civil Action No. 93–C–952.

**2.** By law, employers of migrant workers are required to:

guarantee to offer the worker employment for at least three-fourths of the workdays of the total periods during which the work contract and all extensions thereof are in effect, beginning with the first workday after the arrival of the worker at the place of employment and ending on the expiration date specified in the work contract, or in its extensions, if any. 20 C.F.R. § 655.102(b)(6)(i) (1998).

these issues, we conclude that the lower court was in error with regard to its determination that res judicata principles precluded it from considering Plaintiffs' claims for 1983–1987 and in its dismissal, without findings, of the Plaintiffs' individual claims for unlawful wage assignments. The lower court did not commit error, however, in refusing to consider Plaintiffs' claims for 1988–1989; in holding that the Act did not apply to the three-fourths guarantee claims; or in dismissing the individually-named Defendants. Accordingly, we affirm, in part, and reverse, in part, the decision of the circuit court.

### I. Factual and Procedural Background

Plaintiffs are migrant farm workers from Jamaica[3] who were hired to pick apples in the orchards of the Defendant apple growers in one or more years from 1983 through 1989. Grapevine, whose shareholder members are apple growers in the eastern panhandle of West Virginia, was the contractual agent who traveled to Jamaica and entered into contracts with the individual farm workers on behalf of the individual growers.[4] The apple-picking season lasts, at best, six to seven weeks. Despite this potential harvesting period, the picking season often ends earlier due to the fact that the apples trees are completely picked.[5] As a matter of practice, the Defendant growers would provide Plaintiffs with an advance ten-day notice of the date when the apple-picking season would officially end.[6]

Citing the three-fourths guarantee language in their contracts,[7] Plaintiffs brought suit in state court to recover the differential in the pay they received with what they alleged they were owed pursuant to the contractual provision guaranteeing them either a minimum amount of work or payment in lieu of available work. There is no dispute that each of the Defendant growers paid Plaintiffs their wages in full through the end of the ten-day notice period and there is also no dispute that, at the end of the ten-day period, there were no more apples in need of picking. In addition, the individual Plaintiffs alleged that Defendants wrongfully assigned portions of their wages for such items as insurance, travel-related expenses, and medical costs, in violation of the Act. *See* W.Va. Code § 21–5–3.

When this matter was previously before us, we determined that the Defendant growers were joint employers with the contracting agent, Grapevine, and that a ten-year statute of limitations applied to Plaintiffs' contractual-based claims. *See Rowe v. Grapevine Corp.* ("*Rowe I*"), 193 W.Va. 274, 456 S.E.2d 1 (1995). Following our ruling in *Rowe* I, Plaintiffs filed a consolidated amended class action on July 31, 1995. In response to cross-motions for summary judgment that were filed in December 1995 and January

---

3. In order for an employer to hire nonimmigrant aliens as workers, the employer has to obtain "certification" from the Department of Labor. To obtain this certification, the employer must demonstrate that there are insufficient workers available in this country to perform the necessary work and also that the employment of temporary foreign workers will not adversely affect the wages and working conditions of similarly employed United States workers. *See* 8 U.S.C. § 1188(a)(1) (1995); 20 C.F.R. § 655.200 (1998).

4. Grapevine is actually the successor corporation to Tri–County Growers, Inc., the corporate entity with whom Plaintiffs entered into their respective work contracts.

5. Defendants represent that while the apple pickers were given the opportunity to stay on and prune the trees, most of the pickers preferred to either go to Florida to work as sugarcane pickers or to return to their homeland.

6. In 1991, the Department of Labor determined that this practice of giving a 10–day notice was valid and was not violative of the contractual terms at issue. At least one court has upheld this practice. *See Sugar Cane Growers Coop. of Florida, Inc. v. Pinnock*, 735 So.2d 530 (Fla.Dist.Ct.App.1999) (upholding validity of using 10–day notice to terminate contracts with migrant workers employed under contracts containing three-fourths guarantee provisions).

7. The three-fourths guarantee language in Plaintiffs' work contracts provides as follows:

The employment guarantees the worker the opportunity for the hourly equivalent of at least three-fourths (¾) of the work days (as defined in Article I) of the total period during which the work contract and all extensions thereof are in effect, beginning with the first workday after the worker's arrival at the place of employment and ending on the termination date specified in this contract or its extension, if any.

1996, Judge Wilkes denied Plaintiffs' motion for summary judgment, but granted partial summary judgment to Defendants for the 1983–1987 claims on res judicata grounds due to the dismissal of these same claims by a federal administrative law judge. Judge Wilkes also dismissed individual Defendants Charles and Dorothy Leavitt,[8] holding that they were not employers within the meaning of the Act. Plaintiffs sought relief from both of these orders[9] under Rule 59(e) of the West Virginia Rules of Civil Procedure. Due to a variety of factors, this case did not proceed for a lengthy period of time.[10]

By order dated December 30, 1998, Judge Taylor denied Plaintiffs' motion to alter or amend the order of February 28, 1996, dismissing Defendants Charles and Dorothy Leavitt and further denied Plaintiffs' motion to alter or amend the order of July 22, 1996, dismissing Plaintiffs' claims for the three-fourths guarantee for the years 1983 to 1987 on res judicata grounds. In this same order, Judge Taylor, ruling for the first time on these issues, dismissed Plaintiffs' three-fourths guarantee claims for 1988 and 1989; dismissed Plaintiffs' claims for liquidated damages under the Act on grounds that the three-fourths guarantee payments were not "wages" under the Act; and dismissed Plaintiffs' unlawful wage assignment claims. Plaintiffs appeal from the adverse rulings made in the lower court's order entered on December 30, 1998.

## II. Standard of Review

■ Plaintiffs contend that our review of this matter should be de novo consistent with our holding in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), which identifies the standard of review for summary judgment rulings. This case does not present itself, however, as a typical matter that has been wholly resolved on grounds of summary judgment. Instead, the matter before us involves the lower court's reconsideration of previous orders pursuant to pending motions to alter or amend in addition to unresolved summary judgment motions. In syllabus point one of *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998), we held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Because the orders[11] which Plaintiffs sought to alter or amend were both granted as motions for summary judgment, the applicable standard of review which governs Judge Taylor's consideration of Plaintiffs' motions to alter or amend the judgments previously entered by Judge Wilkes is de novo under our holding in *Wickland*. With regard to the remaining matters that were resolved for the first time in Judge Taylor's December 30, 1998, order, our review of those issues is also on a de novo basis as those matters were ruled upon on grounds of summary judgment. *See Peavy*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 1.

8. Mr. and Mrs. Leavitt are officers of Del Orchard, Inc. Del Orchard is one of the shareholders of Grapevine.

9. Judge Wilkes entered the order dismissing the Leavitts on February 28, 1996, and the order dismissing the 1983–1987 three-fourths guarantee claims on July 22, 1996.

10. One such factor was a change in the law governing federal funding of legal services programs which mandated that West Virginia Legal Services Plan withdraw as counsel for Plaintiffs. Another delay resulted from the fact that a stay went into effect on October 28, 1996, pending a ruling on a substitution of counsel motion filed by Defendants, and was not lifted until January 8, 1998. We observe additionally that a total of six circuit court judges have been assigned to this matter, pursuant to both a rotational system of case assignment and administrative orders of this Court.

11. The orders which were the subject of Plaintiffs' motions to alter or amend were the February 28, 1996, order entered by Judge Wilkes dismissing the Leavitts, and the July 22, 1996, order dismissing Plaintiffs' three-fourths guarantee claims.

## III. Discussion

### A. Dismissal of 1983–1987 Claims on Res Judicata Grounds

■ In 1990, Plaintiffs [12] filed a complaint with the Department of Labor alleging that Grapevine had violated the three-fourths guarantee provision during the 1983 to 1989 picking seasons. By order dated June 16, 1994, the administrative law judge hearing the matter for the Department of Labor determined that the claims for 1983–1987 were time-barred by the provisions of 20 C.F.R. § 655.110(a) (1998).[13] That provision provides that "[i]f, during the period of two years after a temporary alien agricultural labor certification has been granted ... [and the regional administrator] has reason to believe that an employer violated a material term or condition of the temporary alien agricultural labor certification, the [regional administrator] shall ... investigate the matter." *Id.* Concluding that the Department of Labor "lacked the authority to proceed with the investigation" under the prescribed two-year period for conducting investigations, the administrative law judge dismissed Plaintiffs' claims for 1983–1987.[14]

When considering cross-summary judgment motions of the parties in 1996, Judge Wilkes found:

the plaintiffs herein were parties to the prior action (or in privity with parties to that action); that the three-quarter guarantee claims set forth in the present case with respect to the 1983–1987 harvest seasons are substantially the same as those in the prior litigation; and that the earlier litigation resulted in a final judgment dismissing plaintiffs' claims therein with prejudice. Accordingly, the Court is of the opinion that plaintiffs' three-quarter claims herein for the 1983–87 harvest seasons must be dismissed with prejudice on the ground of *res judicata.* The facts material to this determination are not genuinely disputed, and defendants are entitled to

partial summary judgment as a matter of law.

Judge Taylor, in ruling on Plaintiffs' motion to alter or amend the partial grant of summary judgment with regard to the 1983–1987 claims, held that:

Denial to reconsider this ruling of Judge Wilkes is predicated on the facts and theories that Plaintiffs['] counsel in this civil action were also counsel of record in the DOL [Department of Labor] proceeding, that no appeal other than a motion for reconsideration was requested by such counsel, that the administrative procedures were not pursued and exhausted, that no appeal of this federal administrative decision was prosecuted in the federal courts, and that this administrative decision complies with the doctrine of res ajudicata [sic] and collateral estoppel would apply.

Arguing that the necessary prerequisites for claim preclusion are lacking in this case, Plaintiffs maintain that the circuit court erred in determining that res judicata principles apply. Res judicata "is often analyzed ... to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Although these judicial concepts are integrally related, issue preclusion is typically referred to under the rubric of collateral estoppel and claim preclusion under the more generalized designation of res judicata. In *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), we recognized the conceptual distinctions between collateral estoppel and res judicata:

*Res judicata* generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980); *In re Estate of*

---

**12.** Three of the current Plaintiffs instituted the proceedings "on behalf of themselves, and all others who were employed at ... [Grapevine]."

**13.** A regional advisor for the Department of Labor had initially determined that there were vio-

lations of the three-fourths guarantee provisions for the 1983–1987 seasons. *See infra* note 19.

**14.** The claims filed by Plaintiffs for 1988–89 were timely filed within the two-year period and were investigated by the Department of Labor.

*McIntosh*, 144 W.Va. 583, 109 S.E.2d 153 (1959). A claim is barred by *res judicata* when the prior action involves identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment. *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983); *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

194 W.Va. at 9, 459 S.E.2d at 120 (footnote omitted). Since Plaintiffs have assigned as error the lower court's ruling that res judicata barred its consideration of the claims for 1983–1987, we will confine our analysis to claim preclusion principles.

█ Application of res judicata precepts, as we acknowledged in *Miller*, is not confined to judicial rulings, but "may be applied to administrative actions as well." *Id.* at 9, 459 S.E.2d at 120 (citing 2 *Restatement (Second) of Judgments* § 83 (1982)); *accord Wheeling–Pittsburgh Steel Corp. v. Rowing*, 205 W.Va. 286, 517 S.E.2d 763 (1999) (stating "[i]t is now well[-]established that 'the doctrine of res judicata may be applied to quasi-judicial determinations of administrative agencies' "). *Id.* at 296, 517 S.E.2d at 773. "[T]he findings and conclusions of an administrative agency may be binding upon the parties in a subsequent proceeding if the agency that rendered the decision acted in a judicial capacity and resolved disputed issues of fact which the parties had an opportunity to litigate." *Miller*, 194 W.Va. at 9, 459 S.E.2d at 120. We further explained in syllabus point two of *Vest v. Board of Education*, 193 W.Va. 222, 455 S.E.2d 781 (1995):

> For issue or claim preclusion to attach to quasi-judicial determinations of adminis-

trative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to application of administrative *res judicata* or collateral estoppel.

Differences in the quality or the extensiveness of administrative procedures employed may, however, militate against applying res judicata to administrative rulings, especially where the procedures utilized in the administrative forum were tailored to reaching a prompt, inexpensive determination. *See Miller*, 194 W.Va. at 10, 459 S.E.2d at 121.

Plaintiffs contend that the lower court erred in applying res judicata to the federal administrative ruling because none of the Plaintiffs were either actual parties to that proceeding or in privy with the parties; Plaintiffs could not have prosecuted their claims or obtained an enforceable remedy in the administrative proceeding; the administrative decision was not a decision on the merits of the claim; and the due process protections necessary for res judicata were not present in the administrative proceeding. Based on these impediments, Plaintiffs argue that it was error for the lower court to refrain from deciding their claims relative to the 1983–1987 picking seasons.

█ We examine the lower court's decision to employ res judicata pursuant to the three-pronged standard that we articulated in syllabus point four [15] of *Blake v. Charleston Area Medical Center, Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997):

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication

**15.** Defendants observe that because a federal agency issued the administrative decision at issue here, federal law must determine the res judicata effect of that decision. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 128 Md.App. 39, 736 A.2d 1104, 1108 (1999) (stating that "case law is well settled that it is federal law that determines the preclusive effect of a federal judgment" and citing *Brooks v. Arlington Hosp. Ass'n*, 850 F.2d 191, 195 (4th Cir.1988)); *Litten v. Peer*, 156 W.Va. 791, 796–97, 197 S.E.2d 322, 326 (1973) (applying federal law to determine res judicata effect of federal court decision). Since Defendants concede, however, that the "result would be the same under West Virginia law," we rely on West Virginia precedent in stating the elements necessary for res judicata application. *Cf. Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989) (identifying elements necessary for claim preclusion).

on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Initially then, we must determine whether there was a final adjudication on the merits in the federal administrative proceeding. To support their position, Defendants rely on a decision reached by the Fourth Circuit Court of Appeals in *Shoup v. Bell & Howell Co.,* 872 F.2d 1178 (4th Cir.1989), which held that "dismissal ... on statute of limitations grounds is a final judgment on the merits." *Id.* at 1179 (applying Rule 41(b) of the Federal Rules of Civil Procedure); *but see Shoup,* 872 F.2d at 1182–86 (contending that dismissal on statute of limitations grounds is not adjudication on merits) (Murnaghan, J., dissenting); *see also* Syl. Pt. 1, *Gillespie v. Johnson,* 157 W.Va. 904, 209 S.E.2d 143 (1974) (holding that dismissal of case on statute of limitations grounds is final judgment, and barring appeal, has res judicata effect). Defendants maintain that the two-year investigatory period set forth in 20 C.F.R. § 655.110(a) was indeed a limitations period and therefore, under *Shoup,* the dismissal based on this regulation qualifies as an adjudication on the merits. Conversely, Plaintiffs argue that the regulatory provision at issue is not the equivalent of a statute of limitations and therefore, the requisite adjudication on the merits never took place.

The federal courts[16] are in virtual accord that a suit's dismissal "based on the running of the statute of limitations will, absent a clear directive to the contrary, be deemed a dismissal on the merits that will bar the filing of a subsequent suit on the ground of res judicata." *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 128 Md.App. 39, 736 A.2d 1104, 1116 (1999) (citing authority from nine federal circuit courts of appeal for position

that dismissal on statute of limitations grounds is judgment on merits); *but see Reinke v. Boden,* 45 F.3d 166 (7th Cir.), *cert. denied,* 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995) (holding that Illinois federal court erred in giving preclusive effect to Minnesota state court's dismissal of action on statute of limitations grounds based on Minnesota's treatment of statutes of limitations as procedural in nature and without preclusive effect).

The problem presented by this case is that the regulation which effected the administrative law judge's decision to dismiss the 1983–1987 claims does not even remotely resemble a statute of limitations. The provisions at issue in 20 C.F.R. § 655.110(a) govern the authority of the regional administrator for the Department of Labor to *investigate* whether an employer has violated the terms and conditions of a temporary alien agricultural labor certification. The regulatory language at issue is not stated in terms typical of limitations periods, such as the failure to bring a claim within a set number of years will preclude the bringing of that claim. As Plaintiffs observe, the applicable provisions of 20 C.F.R. § 655.110(a) merely set forth a time restraint which governs the authority of the regional administrator to investigate alleged violations by the employer and, consequently, determine whether a penalty can be imposed against the employer.[17] Since the regulations at issue do not grant temporary workers a cause of action, Plaintiffs suggest that it logically follows that those same regulations also do not seek to limit temporary workers from bringing causes of action in either an administrative or judicial forum.

Given the regulatory framework involved—the certification of employers for hiring nonimmigrant aliens as workers—we would be hard-pressed to find that the regulation at issue qualifies as a statute of limitations for purposes of claims to be brought by migrant workers. The regulation was clearly aimed at revoking an employer's certification and *not* at providing a cause of action for

---

**16.** *See supra* note 15.

**17.** The penalty for violating the certification which permits utilization of temporary alien agricultural laborers includes future exclusion from

obtaining such a certification and monetary penalties. *See* 8 U.S.C. § 1188(g)(2); 29 C.F.R. § 501.19 (1998).

migrant workers. Even the language used to dismiss the case suggests that the regulation was not applied as a statute of limitations. The stated basis for the dismissal is the administrative law judge's conclusion that the "Regional Administrator lacked the authority to proceed with the investigation in this matter." Rather than resembling a statute of limitations, this stated ground for dismissal is more akin to a conclusion that jurisdiction was lacking.

Under Federal Rule 41(b)—the rule upon which federal cases dealing with the res judicata effect of dismissals are based—there are three clear exceptions to dismissals having the automatic effect of an adjudication on the merits. Those delineated exceptions are dismissals for lack of jurisdiction, for improper venue, or failure to join a party under Rule 19. See Fed.R.Civ.P. 41(b).[18] Discussing the United States Supreme Court's edification in *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), concerning the "lack of jurisdiction" exception to Rule 41(b), the Fourth Circuit observed in *Shoup*:

> At issue in *Costello* was whether a district court's previous dismissal of a denaturalization proceeding because the government had failed to file an affidavit of good cause should operate as a dismissal on the merits so as to bar a subsequent denaturalization proceeding. The Supreme Court held that the dismissal was essentially one " 'for lack of jurisdiction,' within the meaning of the exception under Rule 41(b)." The Court added that it regarded the lack of jurisdiction exception as "encompassing those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim."

*Shoup*, 872 F.2d at 1180 (citation omitted).

Explaining why a dismissal on statute of limitations grounds differs from a dismissal for lack of jurisdiction, the Court stated in *Shoup*:

> "[D]ismissals for want of jurisdiction are paradigms of non-merits adjudication." See *Nilsen* [*v. City of Moss Point, Miss.*, 701 F.2d 556,] at 562 [ (5th Cir.1983) ]. In such a dismissal the court does not "regard the merits of an action." It "merely classif[ies][an] action, whatever its merits, as one on which the court concerned cannot speak." In contrast, a statute of limitations dismissal assumes the court "could have spoken but refuses to do so." *Id.*

872 F.2d at 1181. Under the reasoning set forth in *Shoup*, the dismissal that resulted from the administrative law judge's conclusion that the regional administrator lacked authority to even investigate Plaintiffs' claims is analogous to a finding of no jurisdiction. Rather than a dismissal where the court had jurisdiction but could not proceed because of a statutorily-imposed time impediment, the Department of Labor was without authority, as it concluded, to even investigate the claims for the years 1983–1987.[19] See 20 C.F.R. § 655.110(a). Accordingly, the dismissal by the Department of the Labor was, under the reasoning employed in *Shoup*, a " 'non-merit[ ] adjudication.' " 872 F.2d at 1181 (quoting *Nilsen*, 701 F.2d at 562).

Based on our conclusion that the regulatory provision at issue cannot be likened to a statute of limitations, we find that the critical first element necessary for giving the administrative dismissal order preclusive effect—an adjudication on the merits—has not been met. Given our determination that a final adjudication on the merits was not reached, we further conclude that the lower court erred in dismissing Plaintiffs' claims for 1983–1987 on grounds of res judicata.[20]

---

**18.** In pertinent part, Rule 41(b) provides:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b). Our state counterpart to this rule is identical, but for the omission of joinder as an exception to dismissal serving as an adjudication on the merits. See W.Va. R.Civ.P.41(b).

**19.** In its dismissal order, the Department of Labor administrative law judge severely berated the regional administrator for not informing the law judge about the two-year time bar to investigating violations of the federal laws at issue.

**20.** Because we find the first of three elements necessary for res judicata to be lacking, we do

## B. Dismissal of 1988–89 Claims

■ The circuit court dismissed Plaintiffs' claims for the 1988 and 1989 harvesting seasons based on the fact that a settlement agreement had been entered into between the Department of Labor and Grapevine for the three-fourths guarantee claims pertinent to these two years.[21] In explanation of its ruling, the lower court gave the following reasons:

> Even though Plaintiffs' attorneys contends [sic] they were not counsel of record in this proceeding and the Plaintiffs were not parties as claimants under the contractual obligations flowing to employed workers in compliance with the three-fourths guarantee, this court recognizes the Settlement Agreement there reached considered the unpaid wages in specific amounts to individual workers for each year, i.e. 1988 and 1989. This agreed sum was paid to the U.S. DOL Wage and Hour Division and it was thereupon distributed to the affected employees or to their estates in accordance with the list of employees filed in that administrative proceeding. These workers upon receipt of their share would be placed on notice of the award and thus required to contest this payment if be-

lieved to be incorrect in that proceeding or lose their rights to same.

Plaintiffs argue that Judge Taylor erred in giving preclusive effect[22] to the settlement agreement reached with regard to their three-fourths guarantee claims for 1988–89 because the individual Plaintiffs were not actual parties to the Department of Labor proceeding. In addition, Plaintiffs maintain that because the settlement amounts they received did not include interest, they were not fully compensated for their claims for this time period.

In marked contrast to the claims for 1983–1987, Plaintiffs' claims for the 1988–89 season were actually investigated and resulted in the entry of a consent order. Pursuant to the settlement agreement, Grapevine paid to each of the Plaintiffs an amount representing the difference between the pay they received for those two picking seasons and what they should have been paid pursuant to the three-fourths guarantee provisions in their respective contracts. Grapevine paid the full amount of the three-fourths guarantee payments sought by the Department of Labor. None of the Plaintiffs dispute that they in fact received, pursuant to the settlement agreement, an amount to compensate them for Defendants' violations of the three-fourths guarantee for 1988–89.[23] The es-

---

not proceed at this juncture to examine the second and third elements. *See Blake,* 201 W.Va. at 472, 498 S.E.2d at 44, syl. pt. 4.

**21.** Pursuant to the terms of the settlement agreement, Grapevine paid a total of $30,301.35 in unpaid wages as a result of non-compliance with the three-fourths guarantee provision. In addition, Grapevine paid a $5,000 civil penalty for failing to comply with the provisions of 20 C.F.R. § 655.102(b)(6). *See* 8 U.S.C. § 1188(g)(2); 29 C.F.R. § 501.19. This penalty payment was in compromise of the $107,000 originally assessed in civil penalties.

**22.** Although the circuit court did not use the term "res judicata" in its December 30, 1998, order with regard to its ruling on the 1988–89 claims, Defendants argue that res judicata precepts control with regard to the lower court's decision to view the settlement agreement as barring Plaintiffs' claims for this time period. Finding no impediment to application of that doctrine to the court's reliance on the settlement agreement, we analyze the lower court's decision to resolve the 1988–89 claims based upon res judicata principles.

**23.** Plaintiffs, in their brief, do provide two different calculations as to the amounts they contend should have been paid under the three-fourths guarantee. They posit that, rather than the $110.93 amount that George Myers was paid for 1989, he was actually owed $442.20. Similarly, they state that Errol Young was paid $75.60 when he was owed $442.20. Any dispute as to these amounts should have been resolved either at the administrative proceeding or on appeal therefrom. As Judge Taylor observed, Plaintiffs never took any appeal from the entry of the consent decree resolution of the 1988–89 claims. *See* 5 U.S.C. § 702 (1995) (providing that "[a] person ... adversely affected or aggrieved by agency action ... is entitled to judicial review thereof"); *see also PepsiCo, Inc. v. FTC,* 472 F.2d 179, 185–86 (2nd Cir.1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973) (rejecting position that review of administrative rulings is limited to entities that were parties to administrative proceeding and citing *Pittsburgh & W.Va. Ry. Co. v. United States,* 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980 (1930)). Defendants further note that Plaintiffs offered nothing more than their own calculations as support for their claim regarding erroneous calculations. Defen-

sence of Plaintiffs' dispute as to the lower court's dismissal of their claim for 1988–89 based on the entry of the consent order is that if they were permitted to proceed with this claim in state court, they could receive liquidated damages in the form of interest for the more than six-year period that passed before they received payment pursuant to the settlement agreement.[24]

■ Refuting Plaintiffs' argument that the settlement agreement should not be given preclusive effect under res judicata principles, Defendants argue that, under federal law, a consent order, such as that entered into here, has "the same force and effect as an order made after full hearing." 29 C.F.R. § 501.40(b)(1) (1998). The settlement agreement at issue contains language, as required by law, stating that it "shall have the same force and effect as Consent Findings and Order of the type described in 29 C.F.R. § 501.40." It is well-settled that resolution of an action based on a consent decree is a final judgment on the merits for purposes of res judicata. *See NAACP v. Metropolitan Council*, 125 F.3d 1171, 1174 (8th Cir.1997); *Riddle v. Cerro Wire and Cable Group, Inc.*, 902 F.2d 918, 921 (11th Cir.1990); *Ho ex rel. Ho v. San Francisco Unified Sch. Dist.*, 965 F.Supp. 1316, 1321 (N.D.Cal.1997); *Bechtel Petroleum, Inc. v. Webster*, 636 F.Supp. 486, 497 (N.D.Cal.1984) (stating that "consent decree is as final, conclusive, and binding for purposes of *res judicata* as one rendered after adversarial proceedings"). Accordingly, the first requirement necessary to invoke res judicata principles—a final adjudication on the merits—is easily met. *See Shoup*, 872 F.2d at 1179, *Blake*, 201 W.Va. at 472, 498 S.E.2d at 44, syl. pt. 4.

■ Plaintiffs contend that a lack of privity[25] between themselves and Grapevine nec-

essarily bars the preclusive effect of the settlement agreement with regard to their claims for 1988–89. Relying on *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir.1986), Plaintiffs argue that the consent order did not constitute a release as to their 1988–89 claims against Grapevine. *Walton*, however, is not apposite authority as that case deals with application of a specific provision of the Fair Labor Standards Act ("FLSA")—29 U.S.C. § 216(c)—which pertains to payment of unpaid minimum wages or unpaid overtime compensation. At issue in *Walton*, was the interpretation of statutory language specifying that " 'the *agreement* of any employee to accept such payment' " followed by receipt of payment operates as a waiver to additional recovery. 786 F.2d at 305 (quoting 29 U.S.C. § 216(c) and emphasis supplied). Citing principles of statutory construction which require that legislative inclusion of a term connotes an attendant meaning for such term, the Court in *Walton* determined that the cashing of the settlement check in payment of the minimum wage obligation was not enough to meet the legislative intent underlying 29 U.S.C. § 216(c). 786 F.2d at 305–07. Since this case involves neither the FLSA nor the specific interpretational issue concerning what acts are required to demonstrate an employee's *agreement* to accept payment in settlement of deficient minimum wages, *Walton* is not persuasive authority.

In furtherance of their contention that privity is nonexistent, Plaintiffs argue that the lack of direct involvement in the settlement negotiations combined with their non-signatory status to the agreement proves fatal with regard to viewing the settlement agreement as dispositive of their claims. As Defendants explain, however, the doctrine of

dants observe that the amounts paid Plaintiffs were based on the Department of Labor's own calculations and that these calculations were made a part of the record and appended to the consent order. In several instances, according to Defendants, Grapevine actually recognized understatements of the amounts owed Plaintiffs and these calculation errors were then corrected by the Department of Labor.

**24.** Based on our conclusion that payments made to Plaintiffs under the three-fourths guarantee do

not constitute "wages" under the Act consistent with our holding in *Conrad v. Charles Town Races, Inc.*, 206 W.Va. 45, 521 S.E.2d 537 (1998), this position is without merit. *See infra* section III. C. of this opinion.

**25.** As we noted in *Gribben v. Kirk*, 195 W.Va. 488, 466 S.E.2d 147 (1995), "the privity concept is fairly elastic under West Virginia law, as elsewhere." *Id.* at 498, 466 S.E.2d at 157 n. 21.

representative claim preclusion eviscerates Plaintiffs' contentions on this issue. In *EEOC v. U.S. Steel Corp.,* 921 F.2d 489 (3rd Cir.1990), individuals who had previously brought suit against their employer on age discrimination grounds but were unsuccessful, were precluded from pursuing subsequent litigation of those same claims through an EEOC action. Attempting to avoid the preclusive effect of the individual's unsuccessful suits, the EEOC argued that no privity existed as different parties were involved in each proceeding. Analyzing whether the EEOC and the private plaintiffs were in privity, the Court stated:

> Privity, as noted by this court many years ago in an opinion authored by Judge Goodrich, "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *One relationship long held to fall within the concept of privity is that between a nonparty and party who acts as the nonparty's representative. See Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 2191 n. 2, 104 L.Ed.2d 835 (1989); Restatement (Second) of Judgments § 41(1980).

921 F.2d at 493 (citation omitted and emphasis supplied). The Court further observed in *U.S. Steel* that "[o]ver the years, claim preclusion has been applied to a variety of representatives" such as trustee actions, class actions, and labor union actions. *Id.* at 493–94.

■ This principle of representative claim preclusion indisputably applies to actions brought by a government agency or officer on behalf of non-party individuals. *U.S. Steel,* 921 F.2d at 494. "Well established precedent ... holds that the judgment in an action in which a government agency or officer represents private individuals is binding on those individuals." *Id.* (citing *Heckman v. United States,* 224 U.S. 413, 445–46, 32 S.Ct. 424, 56 L.Ed. 820 (1912) (recognizing "if the United States ... is entitled to bring a suit ... [to set aside illegal land conveyances], it must follow that the decree will bind not only the United States, but the Indians whom it represents in the litigation")); *see also Alaska Sport Fishing Ass'n v. Exxon Corp.,* 34 F.3d 769, 774 (9th Cir. 1994) (holding that consent decree in action by United States and State of Alaska against Exxon which resolved governments' claims for damage to use and enjoyment of environment had res judicata effect and precluded non-party sport fisherman from pursuing same type of claim in separate action against Exxon); *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1125 (7th Cir.1987) (discussing doctrine of "virtual representation" which permits privity element of res judicata to be satisfied when "the party to the first suit was an adequate representative of the ... interests" of party to second suit);[26] *Jones v. Bell Helicopter Co.,* 614 F.2d 1389 (5th Cir.1980) (holding that dismissal of EEOC's action for failure to comply with Administrative Procedures Act barred subsequent private action based on same claim under res judicata principles), *abrogated on other grounds as stated in United States v. Popovich,* 820 F.2d 134 (5th Cir.1987); *McClain v. Wagner Elec. Corp.,* 550 F.2d 1115, 1119 (8th Cir.1977) (ruling that EEOC consent decree with employer barred subsequent private action by employee against employer on same alleged acts of discrimination); *EEOC v. Harris Chernin, Inc.,* 767 F.Supp. 919, 923 (N.D.Ill. 1991) (applying res judicata principles to bar EEOC from pursuing ADEA claim for employee whose individual ADEA claim had previously been dismissed on statute of limitations grounds and discussing trend to loosen " 'the traditional and sometimes artificial limitations on the application of res judicata' " with regard to privity requirement) (citing *Maguire v. Selcke,* 1990 WL 70451 at *4, (N.D.Ill.1990) and quoting *Diaz v. City of Chicago,* 601 F.Supp. 1251, 1253 (N.D.Ill. 1984)), *aff'd in part, rev'd in part,* 10 F.3d 1286 (7th Cir.1993);[27] *but cf. EEOC v. Bap-*

---

**26.** In *Gribben,* we described the "doctrinal framework of virtual representation" as a "framework in which the party and nonparty share identical interests and [one] that provides for notice and a weighing of equitable considerations." 195 W.Va. at 498, 466 S.E.2d at 157, n. 21. We observed that a nonparty who falls within this framework "should not be treated differently from a party." *Id.*

**27.** The Seventh Circuit expressly affirmed the district court's determination in *Harris Chernin* that an individual's prior "ADEA suit bars recov-

*tist Mem'l Hosp.*, 615 F.Supp. 111, 115 (W.D.Mo.1984) (holding that employee was not precluded from bringing separate employment discrimination action against employer where employee was not a party to consent decree entered into between EEOC and employer, employee had rejected consent decree and had received no relief under decree).

Acknowledging that "[w]hile the principle of claim preclusion by virtue of government representation is settled," in certain cases, as the Court in *U.S. Steel* recognized, it can be difficult to determine "whether a government officer or agency represents or represented private individuals for res judicata purposes."[28] 921 F.2d at 494. The Court had no difficulty, however, in determining in *U.S. Steel* that "it is clear that the EEOC sought to serve as the representative of the former employees...." *Id.* at 494. Critical to the Court's conclusion was the fact that the EEOC was attempting to obtain pension benefits on behalf of the individuals formerly employed by U.S. Steel. *Id.* Additional evidence that the Court cited as indicative of the government's representational status was the employees' willingness to accept relief awarded in the EEOC action. According to the Court, "[t]his demonstrates that they view the EEOC as a representative who sought to litigate on their behalf." 921 F.2d at 495.

Plaintiffs' contention that their absence as named parties to the settlement agreement prevents the agreement from operating as a bar to their state court claims was expressly rejected by the Court in *U.S. Steel:*

The absence of any formal designation of the individual claimants as parties, however, does not change the nature of the EEOC's role as the individuals' representative and should not change the effect of the doctrine of claim preclusion. By claiming or accepting individual relief won by the EEOC, the individuals would necessarily concede that the EEOC was their representative and that they were embraced by the EEOC's judgment.

921 F.2d at 496. Applying the doctrine of representative claim preclusion, the Court in *EEOC* determined that when an administrative agency, in the course of pursuing an enforcement action, obtains monetary relief that is accepted by private individuals through a consent decree or final judgment, the agency's action has res judicata effect and precludes litigation by the aggrieved parties on the same cause of action against the same defendant. *See id.* at 496–97.

For the same reasons the EEOC was determined to have been acting on behalf of the former U.S. Steel workers,[29] we conclude that the Department of Labor was similarly acting in a representational capacity when it sought to enforce the three-fourths guarantee provision of the work contracts between Grapevine and Plaintiffs and did in fact obtain monetary relief for Plaintiffs as a result of its efforts. Through their acceptance of the monetary relief obtained through the settlement agreement, Plaintiffs have conceded that the Department of Labor was indeed their representative with regard to obtaining relief on their behalves.[30] *See U.S. Steel,* 921

---

ery by the EEOC of backpay, liquidated damages, and reinstatement in his behalf[,]" but reversed the district court as to its ruling that the EEOC could not seek injunctive relief predicated on individual's age discrimination allegations. *See* 10 F.3d at 1291.

**28.** The situations that typically present difficulty are those where the government agency has enforcement interests separate from those of the individuals it is representing. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 333, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *Harris Chernin*, 10 F.3d at 1291; *U.S. Steel*, 921 F.2d at 494–96 (discussing interplay of public versus private interests associated with EEOC's enforcement role); *Riddle*, 902 F.2d at 922–23 (contrasting interests of EEOC to interests of aggrieved individual in discrimination case); *see also* 18 Charles A. Wright

et al., *Federal Practice and Procedure* § 4458 at 513 (1981).

**29.** While the procedural mechanics of *U.S. Steel* were inverse to what occurred here—there the individual action preceded the agency action— the Court made clear that "the doctrine of representative claim preclusion generally applies equally regardless of the sequence of litigation." 921 F.2d at 495. As the Court explained, "the doctrine of claim preclusion applies symmetrically to instances in which litigation by a representative precedes individual litigation and to those instances in which the opposite sequence occurs." *Id.* at 493.

**30.** Defendants observe that Plaintiffs were represented by counsel experienced in Department of

F.2d at 496. The fact that the settlement agreement released Grapevine rather than the individual Plaintiffs is not determinative. As the Court explained in *Alaska Sport Fishing*, since the government, in its representative capacity, "released Exxon from 'any and all civil claims' that the government brought or could have brought against Exxon ..., under the doctrine of *res judicata*, [the private] plaintiffs are barred from asserting such claims in a second suit." 34 F.3d at 774. The settlement agreement which releases Grapevine "from any and all claims that it might bring under the Act arising out of the events that are the subject of this proceeding [three-fourths guarantee provision payments for 1988–89]," similarly bars Plaintiffs from bringing suit against Grapevine for these same claims. *See id.*

 Having dispensed with the first two elements necessary to afford res judicata principles to the consent decree—finality of judgment and privity—we are left with only one element to consider.[31] The final requirement necessary to give res judicata effect to the settlement agreement is that "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *Blake*, 201 W.Va. at 472, 498

S.E.2d at 44, syl. pt. 4. The claim which was the subject of the consent order was Plaintiffs' alleged entitlement to remuneration for the 1988–89 seasons based on the three-fourths guarantee provision. Plaintiffs have sought relief for this same claim in state court. In an attempt to distinguish the state court claims from those previously pursued in the federal administrative action, Plaintiffs argue that they could not have received liquidated damages (i.e. interest) in the federal proceeding.[32]

Without addressing whether it is the claim or the relief sought that is critical to a finding on identicality of the issues,[33] we conclude that Plaintiffs' distinction concerning the remedial relief sought is without merit given our determination that Plaintiffs are not entitled to liquidated damages under the Act. *See infra* part III. C. Accordingly, we determine that the claims at issue in both the federal administrative proceeding and the subsequent state court proceeding with regard to the 1988–89 claim on the three-fourths guarantee provision are identical for purposes of claim preclusion analysis. Having found no bar to application of the doctrine of res judicata to the consent order under principles of representative claim preclusion, we affirm the lower court's decision to dismiss Plaintiffs' three-fourths guarantee

Labor cases at the time they accepted the settlement checks. Given their expertise in this area of the law, Defendants suggest that Plaintiffs' counsel could have raised their objections to the Department of Labor regarding any concerns Plaintiffs had with either the amount of the settlement or the issue of waiver and release. According to Defendants, the record in the administrative matter contain no such objections.

31. Since the final ruling issued by the administrative tribunal is in fact a consent decree, rather than a ruling which resulted following the consideration of evidence, we find no need to examine whether the procedures employed by the Department of Labor were substantially similar to those used in court. *See Vest*, 193 W.Va. at 223, 455 S.E.2d at 782, syl. pt. 2. Given the entry of a settlement agreement, there are no administrative procedures to compare against procedures typically employed in a traditional judicial setting, nor are there the attendant concerns of whether the litigants were provided a " 'full and fair opportunity to litigate the matters in dispute.' " *Id.* at 227, 455 S.E.2d at 786 (quoting *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 359

S.E.2d 124 (1987)); *see also Miller*, 194 W.Va. at 10, 459 S.E.2d at 121 (discussing fact that legal standards and procedures used must be similar for purposes of issue preclusion).

32. Defendants point out, however, that Plaintiffs requested this type of relief in federal court in addition to damages for contractual enforcement.

33. *See Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 626 (7th Cir.1996) (observing that "[o]rdinarily, it is the cause of action, and not the remedy, which determines whether claim preclusion applies: a claim can be barred even though the plaintiff seeks remedies or forms of relief not demanded in the original action"); *Harris Chernin*, 767 F.Supp. at 922–23 (stating test for determining whether two claims are identical for the purposes of res judicata is whether two claims arose out of same core of operative facts as opposed to whether identical relief was sought in both actions).

claims pertinent to the 1988–89 picking seasons.

## C. Three-fourths Guarantee Payments as "Wages"

■ Plaintiffs urge this Court to reverse the lower court's determination, made in reliance on our recent decision in *Conrad v. Charles Town Races, Inc.*, 206 W.Va. 45, 521 S.E.2d 537 (1998), that the payments made under the three-fourths guarantee provisions do not qualify as "wages" under the Act. In *Conrad*, we considered whether payments that an employer was required to make for failing to comply with the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101–2109 (1994), which requires sixty-days notice of a plant closure, constituted "wages" as defined by the Act.[34] Rather than being "wages," we determined that such payments were "damages designed to compensate employees" for their employer's failure to provide them with an opportunity to work. 206 W.Va. at 49–50, 521 S.E.2d at 541–42. Raising arguments identical to those advanced in *Conrad*, Plaintiffs maintain that the three-fourths guarantee payments come within the Act's alternate definitions for wages.[35]

Similar in nature to payments imposed pursuant to WARN, the three-fourths guarantee payments at issue in this case arise pursuant to federal law when an employer has not made work available for the requisite period under a work contract. *See* 20 C.F.R. § 655.102(b)(6). Just as the WARN payments were determined not to be "compensation for labor or services rendered" or "then accrued fringe benefits," the three-fourths guarantee payments are not "wages" under the Act's definitions. W. Va.Code § 21–5–1(c). Rather than being "wages," the payments made pursuant to the three-fourths guarantee are " 'damages owed employees for suffering an unexpected employment loss where they had a rightful expectation of continued employment with that employer.' " *Conrad*, 206 W.Va. at 49, 521 S.E.2d at 541 (quoting *Georgia–Pacific Corp. v. Unemployment Compensation Bd. of Review*, 157 Pa. Cmwlth. 651, 630 A.2d 948, 956–57 (1993)).

The three-fourths guarantee payments that Plaintiffs sought from Defendants were not for services rendered, nor were they "then accrued fringe benefits." W.Va.Code § 21–5–1(c). Instead, the three-fourths guarantee payments arose as a result of Defendants' failure to provide Plaintiffs the *opportunity to work* for the entire length of the contract period. Consequently, we conclude that payments made to migrant workers pursuant to provisions required by federal law which mandate that an employer/grower must guarantee work for three-fourths of the contractual period or make payments in lieu of providing such work opportunity do not constitute wages as defined by the Act. *See also Nieto–Santos v. Fletcher Farms*, 743 F.2d 638, 642 (9th Cir.1984) (holding that three-quarter guarantee payments were not "wages"[36] under Arizona wage payment laws permitting treble damages for non-payment under rationale that wages are restricted to "compensation due an employee in return for work performed"). Accordingly, we find that the circuit court did not commit error as to its ruling that the provisions of the Act do not apply to the three-fourths guarantee payments.

## D. Unlawful Wage Assignment

■ Plaintiffs maintain that the lower court erred in its dismissal of their claims

**34.** Wages are defined under the Act as "compensation for labor or services rendered" but also include "then accrued fringe benefits capable of calculation." W.Va.Code § 21–5–1(c).

**35.** Plaintiffs argue alternatively that the three-fourths guarantee payments are either "compensation for labor or services rendered" or "then accrued fringe benefits," which are defined to include "any benefit" "which is required by law." W.Va.Code § 21–5–1(c), (*l*).

**36.** Wages are defined under Arizona's wage payment laws as:

nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation. Wages include sick pay, vacation pay, severance pay, commissions, bonuses and other amounts promised when the employer has a policy or a practice of making such payments.

Ariz.Rev.Stat. Ann. § 23–350 (West 1995).

that Defendants committed unlawful wage assignments by withholding various amounts of their pay for such items as insurance, lodging, and travel costs. *See Jones v. Tri-County Growers, Inc.,* 179 W.Va. 218, 222–23, 366 S.E.2d 726, 730–31(1988) (holding that wage assignments of migrant workers were violative of Wage Payment and Collection Act for apple grower's failure to comply with statutory conditions governing such assignments). Since the lower court dismissed this claim of Plaintiffs summarily without any findings whatsoever, we are without a predicate basis for conducting a meaningful review of the ruling on this issue. This is in clear contravention of our directive in syllabus point three of *Fayette County Nat'l Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997), that "a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Accordingly, we find it was error for the lower court to dismiss this claim without making any findings to support its ruling. *See id.*

### E. Dismissal of Individually-Named Defendants

■ In its order dated February 28, 1996, Judge Wilkes determined that Charles O. and Dorothy Leavitt should be dismissed as individuals from Plaintiffs' civil action. In its order, the court stated:

> Neither Charles O. Leavitt nor Dorothy Leavitt have, since 1978, entered into any agreements through Grapevine Corporation to hire foreign agricultural workers for apple harvesting, nor any contract was entered into by Grapevine Corporation, and its predecessor Tri–County Growers, other than on behalf of Del Orchard, Inc., a Corporation for profit.

> Accordingly, it is hereby ORDERED that Charles O. and Dorothy Leavitt have been acting only as shareholders of Del Orchard, Inc. in the hiring and procuring of foreign agricultural workers through Grapevine Corporation, Inc., or its predecessor, Tri–County Growers, during the

period of time in which the Plaintiffs claim that they have violated the West Virginia Wage Payment and Collection Act, and contracts entered into between Grapevine Corporation and the Plaintiff with reference to three-quarters (¾) guarantee and other claims.

> It is hereby ORDERED that Charles and Dorothy Leavitt's liability to any Plaintiffs which may accrue, if any, is limited solely to the amount of any subscribed shares of Del Orchard, Inc., which they have not paid for, as provided for [by] Art. 11[XI], § 2 of the West Virginia Constitution.

Plaintiffs contend that the lower court erred in dismissing the Leavitts as individually-named defendants based on the rulings made in *Rowe* I. *See* 193 W.Va. at 277, 456 S.E.2d at 4.

■ At issue in *Rowe* I was whether the definition of "employer" under the Act could include the individual growers on whose behalf Grapevine hired Jamaican migrant workers. In syllabus point one of *Rowe* I we held:

> The West Virginia Wage Payment and Collection Act, *W.Va.Code* 21–5–1 [1987], *et seq.* is applicable to any firm that suffers or permits a person to work; therefore, when foreign agricultural workers are recruited by a corporation whose only activity is the hiring, transporting, feeding, housing and payment of workers who perform all their services for individual growers, the individual growers are joint employers of the workers for the purposes of the West Virginia Wage Payment and Collection Act.

193 W.Va. at 274, 456 S.E.2d at 1. Our ruling was clearly aimed at expanding the "employer" subject to the provisions of the Act to include the defendant growers on whose behalf Grapevine entered into contracts with migrant workers. *Rowe* I did not address, however, whether the individuals who were named as defendants and who corporately hired migrant workers through Grapevine could be held personally liable under the theories advanced by Plaintiffs.

A careful reading of *Rowe* I demonstrates that implicit in our ruling was the qualification that only the individual apple growers who used Grapevine as their contractual agent to secure migrant workers, were "joint employers" with Grapevine in regards to the migrant workers.[37] *See id.* at 277, 456 S.E.2d at 4. In concluding that the growers who used Grapevine to hire the migrant workers could come within the ambit of the definition of "employer" under the Act, we failed to specify that only the growers, individual or corporate, who were members of Grapevine could be viewed as joint employers with Grapevine. We thus find it necessary to clarify our previous holding in syllabus point one of *Rowe* I to explain that in using the term "individual growers" we were referring, not to those persons named individually as defendants, but to those persons or corporations who were shareholders in Grapevine and for whom Grapevine acted in a representational capacity during the relevant time periods.

The lower court had before it evidence, as its findings demonstrate, that the Leavitts did not personally hire migrant workers. During all relevant time periods, their corporation, Del Orchard, was the contracting agent with Grapevine. Well-established principles of corporate and contract law support the lower court's decision that the Leavitts are not personally liable for damages arising from Plaintiffs' causes of action. *See Mills v. USA Mobile Communications, Inc.,* 190 W.Va. 209, 438 S.E.2d 1 (1993); *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 352 S.E.2d 93 (1986). Accordingly, we find no error with regard to the lower court's conclusion that the Leavitts should be dismissed from this action.

Based on the foregoing, we affirm the decision of the Circuit Court of Berkeley County as to its dismissal of Plaintiffs' claims for the 1988–89 harvesting seasons; its finding that the Act does not apply to the three-fourths guarantee payments; and its dismissal of the Leavitts. We reverse the lower court's rul-

ing as to the dismissal of the 1983–87 claims on the grounds of res judicata and Plaintiffs' wage assignment claims.

Affirmed, in part; Reversed, in part.

Justice SCOTT did not participate in the decision of the Court.

---

**37.** From the emphasis on principles of agency and the statements in *Rowe* I that "Grapevine was the employing agent of the individual defendants and that its activities were undertaken for and on behalf of the individual defendants," it is clear that our ruling was intended to affect those growers, individual or corporate, who had entered into an agency relationship with Grapevine. 193 W.Va. at 277, 456 S.E.2d at 4.